**SEVEN–UP COMPANY, a corporation, Plaintiff,**

v.

**GREEN MILL BEVERAGE COMPANY and Spring Beverage Co., Inc., corporations, Defendants.**

**Civ. A. No. 58 C 1478.**

United States District Court
N. D. Illinois, E. D.
Jan. 31, 1961.

Beverly W. Pattishall, W. Thomas Hof-
stetter, Robert M. Newbury and Wood-
son, Pattishall & Garner, Chicago, Ill.,
for plaintiff.

John C. Brezina, John F. Brezina, Bre-
zina & Buckingham, and Richard E.
Alexander, Chicago, Ill., for defendants.

WHAM, Senior Judge.

### Findings of Fact

1. Plaintiff, The Seven-Up Company, is a Missouri corporation, located and having its principal office and place of business at 1300 Delmar Boulevard, in the City of St. Louis, State of Missouri.

2. Defendants, Green Mill Beverage Company and Spring Beverage Company, Inc., are Illinois corporations located and having their principal office and place of business at 1307 South Pulaski Road, in the City of Chicago, State of Illinois, and are residents and inhabitants of the Northern District of Illinois, Eastern Division.

3. The value in controversy herein exceeds $10,000 exclusive of interest and costs.

4. Plaintiff adopted and commenced using its trademark 7 Up (also written Seven-Up) on or about August 7, 1928, for a soft drink beverage, and for flavors and extracts for making such soft drink beverage, and plaintiff has continuously used, and now uses, said trademark in the manufacture and sale of an extract and flavoring for making a soft drink beverage.

5. Plaintiff adopted its corporate name, The Seven-Up Company, on October 17, 1936 and plaintiff has been known throughout the United States by its said name and has continuously used its said name throughout the United States, and plaintiff's said name has continuously indicated and signified plaintiff and its business to the trade and public.

6. The extract and flavoring for making the lemon-lime soft drink beverage which plaintiff manufactures and sells under its name and trademark 7 Up are sold throughout the United States, including the State of Illinois, County of Cook, and City of Chicago, exclusively to plaintiff's franchised "7 Up" bottlers who manufacture from said extract and flavoring, under plaintiff's license, direction, and control, and sell a soft drink beverage under plaintiff's name and trademark 7 Up.

7. Plaintiff duly registered its trademark 7 Up (Seven-Up) in the United States Patent Office on February 5, 1929 (Reg. No. 252,350), January 7, 1936 (Reg. No. 331,345), February 9, 1943 (Reg. No. 399,995), October 26, 1943 (Reg. No. 403,990), March 14, 1944 (Reg. No. 406,182), December 11, 1945 (Reg. No. 418,191), September 21, 1954 (Reg. No. 595,639), August 14, 1956 (Reg. No. 632,795), and January 8, 1957 (Reg. No. 639,769), and plaintiff registered its trademark 7 Up with the Secretary of State of the State of Illinois on April 14, 1943 (Reg. No. 19,884), and all of said registrations are valid and subsisting, unrevoked and uncancelled, and are owned by plaintiff, and plaintiff's federal registrations, Nos. 252,350; 331,345; 399,995; 403,990; 406,182; 418,191, and 595,639, have become and now are incontestable under the provisions of the United States Trademark Act.

8. Plaintiff has spent more than $50,000,000 in distinctive advertising of its 7 Up brand of soft drink beverage throughout the United States, including the State of Illinois, County of Cook, and City of Chicago, and said distinctive advertising has long since become, and now

is, well and favorably known to the trade and public throughout the United States.

9. Plaintiff and its franchised bottlers sell, and for many years have sold, many millions of cases of 7 Up, and said sales aggregate many millions of dollars annually.

10. Plaintiff and its franchised bottlers sell, and for many years have sold, plaintiff's 7 Up brand of soft drink in a distinctively designed dress and under distinctive labels and in distinctive cartons, cases and bottles which long since have acquired, and now have, a secondary meaning signifying plaintiff and its soft drink beverage.

11. Plaintiff has a large and valuable business in the sale of its extracts and flavorings for making its aforesaid 7 Up soft drink beverage, and plaintiff is the owner of a valuable good will, worth many millions of dollars, represented and symbolized by its aforesaid name and trademark 7 Up (also Seven-Up).

12. The soft drink beverage sold under plaintiff's name and trademark 7 Up is now, and always has been, of high quality and has become well and favorably known by the trade and public, and plaintiff's name and trademark 7 Up is the means by which said soft drink is identified by the trade and public with plaintiff and its business.

13. As a result of plaintiff's distinctive advertising and sales under its name and trademark 7 Up, and as a result of the consistently high quality of the soft drink beverage offered for sale and sold under plaintiff's said name and trademark, 7 Up has come to represent, to the trade and public, a soft drink beverage offered for sale and sold by plaintiff or a concern legitimately connected with, licensed by, or controlled by plaintiff, and plaintiff's name and trademark 7 Up has acquired a distinctiveness and a secondary meaning signifying plaintiff and its lemon-lime soft drink beverage.

14. On or about February 7, 1958, and long subsequent to the adoption and use of the name and trademark 7 Up by

plaintiff, and long subsequent to the acquisition of the distinctiveness and secondary meaning of plaintiff's name and trademark 7 Up, defendant Spring Beverage Company, Inc., acquired an inventory of bottles, labels, cartons, cases, display pieces and crowns, all bearing the trademark Fizz Up, and an Illinois registration of Fizz Up, No. 31,177, dated April 15, 1955, from California Beverage Company, Chicago, Illinois, and defendants thereafter commenced advertising, selling and offering for sale, in interstate commerce, a lemon-lime soft drink beverage under said trademark Fizz Up.

15. Defendants' trademark Fizz Up simulates and colorably imitates plaintiff's trademark 7 Up and defendants' use of Fizz Up simulates plaintiff's distinctive advertising and the over-all appearance of plaintiff's distinctive 7 Up labels, cartons, bottles, crowns and cases.

16. Defendants' use of Fizz Up in connection with the advertising, sale, or offering for sale of a soft drink beverage is likely to cause, and has caused, confusion, mistake or deception of purchasers and potential purchasers as to the source of said beverage in that defendants' beverage is likely to be attributed, and has been attributed, to plaintiff or to a concern legitimately connected with, licensed by, or controlled by plaintiff.

17. Plaintiff's evidence in the form of a stratified and randomized reaction test and sound motion picture interviews demonstrates that a substantial percentage of those who encounter defendants' Fizz Up soft drink believe that it emanates from plaintiff.

18. Defendants' use of Fizz Up irreparably damages plaintiff but because defendants are relatively small, localized and of little impact on the soft drink market in the Chicago area, the amount of damages to plaintiff growing out of customer deception in actual purchaser transactions is not shown by the evidence to have been more than slight.

19. Unless defendants, and each of them, are enjoined from using the trademark Fizz Up, or any other colorable imitation of plaintiff's name and trademark 7 Up, in connection with the sale or offering for sale of a soft drink beverage, plaintiff will continue to suffer irreparable damage to its business and good will, and the trade and public will continue to be confronted with the likelihood of confusion, mistake or deception as to the source of defendants' beverage.

20. Defendants' use of Fizz Up unjustly enriches defendants by enabling them unfairly to trade upon and appropriate plaintiff's good will.

21. Defendants' and their predecessor's use and registration of Fizz Up since April 1955 was without plaintiff's consent.

22. The use and registration of trademarks employing the suffix Up by third parties, as shown by defendants, namely, Talk Up, Cott Up, Bubble Up, Cheer Up, Fresh Up, Wake Up, Van Up, Kings Up, Limber Up, Daniel's Set Up, Tone Up, Up & Up, Set Up, Sales Up, Wise Up, Heads Up, Aces Up, Tee Up, and Get Up, has not conditioned the public mind so as to preclude confusion and likelihood of confusion with plaintiff and plaintiff's trademark 7 Up (Seven-Up) arising out of the use of Fizz Up for lemon-lime soft drink beverages.

### Memorandum Opinion

■ Defendants' evidence relating to third-party uses was admitted subject to objections of plaintiff stated in the record. The objections are now overruled and such evidence held valid and material. In view of the whole record however the Court finds such evidence to be insufficient to sustain defendants' claim to the right to use the accused trademark or to use the word "Up" as a suffix following the word "Fizz" without infringement of the plaintiff's trademark 7-Up and without being guilty of unfair competition with the trademark 7-Up.

■ The evidence fails to sustain the defense of laches as pleaded in the answer.

A side by side comparison by the Court of the defendants' trademark including its form and coloring as displayed on its bottle, with plaintiff's trademark including its label as displayed on its bottle, such as were used in marketing the products of the parties, shows a similarity that might well lead to confusion as to the source of the defendants' product and to deceive an unobservant purchaser as to the source or origin of the goods being sold under defendants' trademark. Furthermore, the six-bottle pack bearing defendants' trademark and used in marketing its product has sufficient similarity to the pack used by the plaintiff to strengthen the likelihood of confusion and deception.

Plaintiff's evidence strengthens its case far beyond the showing of a similarity between the trademarks. The plaintiff produced other evidence which, taken with the similarity or even without the similarity aforesaid, is sufficient to show actual confusion and likelihood of confusion to purchasers and potential purchasers as to the source of goods sold under defendants' trademark. A considerable number of witnesses testified for the plaintiff, that due to the similarity of the trademarks, their words and coloring, they had actually bought Fizz Up with the belief that its original source or manufacturer was 7-Up.

The plaintiff produced evidence of a reaction test conducted by the plaintiff under the professional direction of Professor Britt of Northwestern University faculty, who qualified as an expert in marketing and in making surveys, to determine the reaction of persons confronted with a bottle of Fizz Up as to their belief as to its source and origin. Not fewer than 25 per cent of those interviewed during the conduct of the so-called reaction test stated their belief that the source and origin of Fizz Up was 7-Up.

The plaintiff likewise conducted an interview test with persons who passed the display of Fizz Up bottles in a super-market in the area of Homewood to determine the belief of those interviewed as to the origin of the product displayed under the defendants' trademark. Not fewer than 25 per cent of those so interviewed stated their belief that the source of the product sold under the defendants' trademark was 7-Up. The last mentioned interviews were recorded by hidden sound motion picture camera and the interviewer and those interviewed during the interviews were thereby recorded on film so that the interviews could be reproduced in Court, and part of them were so reproduced and heard and observed by the Court. The evidence shows that the recordings not reproduced had been unintentionally garbled or faultily taken due to mechanical difficulties.

The Court finds that the persons interviewed in the reaction test were selected by a plan calculated to secure interviews on both a stratified and a randomized basis; that the plan was carried out as made and resulted in interviews of persons of varied age, sex, locality, and economic status in nine different areas in the City of Chicago by interviewing each third person passing the interviewer on the streets where the interviews were secured. I find that the plan was explained in Court and the method of taking and recording the interviews was described by a supervisor and an interviewer and was supported by the introduction of the interviews in writing; that such witnesses were credible and believed by the Court and the written interviews found to reflect the results of the interviews.

The Court further finds that both the reaction tests and the movie interviews produced credible evidence of confusion on the part of a substantial percentage of the approximately 1,000 persons interviewed in the reaction tests and of the large number of those interviewed in the super-market in the Homewood area as reflected by the movie and that such interviews were truly reported in plaintiff's evidence; from all of plaintiff's evidence aforesaid the Court finds that the use by the defendants of the accused trademark in marketing their product has caused and is likely to cause confusion or mistake and to deceive pur-

chasers as to the source of defendants' goods and to cause a substantial percentage of purchasers to believe that defendants' product was actually produced by plaintiff.

■ The Court finds that the defendants deliberately used the infringing mark from 1958 to date but the Court does not find under all the evidence, that such use was with deliberate and willful intent to infringe plaintiff mark or to defraud and deceive purchasers. Defendant may have begun the use of 1-Up with such intent but that does not necessarily establish such intent with relation to Fizz Up. They gave up the use of 1-Up and they may well have begun or continued the use of Fizz Up with the honest belief that it did not infringe and was not likely to confuse or deceive purchasers. Their knowledge and observation that other marks which contained the word "Up," as shown by defendants' evidence, may have led them in good faith to believe that Fizz Up was sufficiently unlike 7-Up as not to constitute an infringement and not to deceive. The evidence shows that they purchased and used the accused mark without knowledge that the plaintiff had protested its use by the owner from whom they purchased. The Court finds that the use of the mark by defendants was without deliberate and willful intent to infringe plaintiff's trademark or to deceive the purchasing public.

■ The infringing defendants are comparatively small local manufacturers and dealers in soft drinks and the portion of their business involving the accused mark did not exceed 10 per cent of the total. The amount of damages to the plaintiff growing out of actual customer deception in true purchaser transactions is not shown by the evidence to have been more than slight.

Plaintiff is entitled to an injunction as prayed with provision that within thirty days following the date of the injunction the defendants shall make showing by proper affidavit before Judge Campbell that they have complied with and will continue to comply with the terms and conditions of the injunctions.

Court costs shall be assessed against the defendants, but not attorneys' fees of or on behalf of plaintiff.

### Conclusions of Law

1. The court has jurisdiction over the parties and the subject matter herein.

2. Plaintiff's long priority and continuous use of the name and trademark 7 Up (Seven-Up) for a soft drink beverage entitles plaintiff to the right to the exclusive use of said name and trademark and to be free from the use of said name or trademark, or any simulation or colorable imitation thereof, by others.

3. Plaintiff's Illinois trademark registration, No. 19,884, and federal trademark registrations, Nos. 632,795; 399,-995; 403,990; 639,769; 406,182; 418,191; 595,639; 252,350; 331,345 are valid and subsisting, and plaintiff's registration Nos. 252,350; 331,345; 399,995; 403,990; 406,182; 418,191; and 595,639 have become incontestable and afford plaintiff a conclusive presumption of the exclusive right to use said registered trademark 7 Up (Seven-Up) for a soft drink beverage and extracts and flavorings for making a soft drink beverage.

4. Defendants' use of Fizz Up for a soft drink beverage constitutes statutory trademark infringement of plaintiff's registered trademark 7 Up (Seven-Up) in violation of the trademark statutes of the United States (15 U.S.C.A. §§ 1051–1127) and of the State of Illinois (Ill. Rev.Stat.1960, Ch. 140).

5. Defendants' Illinois registration, No. 31,177, is invalid and affords defendants no rights in the trademark Fizz Up.

6. Defendants' use of Fizz Up for a soft drink beverage constitutes common-law trademark infringement of plaintiff's trademark 7 Up (Seven-Up).

7. Defendants' use of Fizz Up for a soft drink beverage constitutes unfair competition with plaintiff and unjustly enriches defendants to the detriment of plaintiff.

8. Plaintiff's delay in bringing suit does not constitute laches and is no valid defense to defendants.

9. The uses and registrations of trademarks employing the suffix "Up" by third parties do not entitle defendants to use the suffix "Up" following the word "Fizz" as a trademark for a soft drink beverage without infringing plaintiff's trademark 7 Up (Seven-Up) and without being guilty of unfair competition with plaintiff, and said uses and registrations constitute no defense for defendants.

10. Plaintiff has no adequate remedy at law.

11. Plaintiff is entitled to judgment as follows:

(1) Defendants, and each of them, their agents, attorneys, employees, servants, privies, representatives, successors, and assigns, and any and all persons acting by, through, or under authority from defendants, either separately or jointly, shall be enjoined and restrained permanently from using the designation Fizz Up either as a trademark or as a part of advertising in connection with the sale or offering for sale of a soft drink beverage, or doing any other acts likely to dilute plaintiff's trademark 7 Up (Seven-Up) or plaintiff's distinctive advertising or distinctive labels or containers, or likely to induce a belief on the part of the trade or public that defendants' soft drink beverage is plaintiff's soft drink beverage, or that defendants' business or soft drink beverage is in any way connected or affiliated with or licensed, sanctioned or approved by plaintiff.

(2) Defendants, and each of them, their agents, attorneys, employees, servants, privies, representatives, successors, and assigns, and any and all persons acting by, through, or under authority from defendants, either separately or jointly, shall be required:

(a) To deliver up for destruction all of defendants' labels, bottles, cartons, crowns, boxes, signs, cases, posters, and advertising, promotional, and any and all other materials whatsoever, bearing the designation Fizz Up, or simulating plaintiff's distinctive labels, bottles, cartons, or advertising; and,

(b) To pay to plaintiff its taxable costs in this action; and,

(c) To make a showing to this Court within 30 days, by proper affidavit, that they have complied with and will continue to comply with the terms and conditions of the foregoing.