THE SAMPLE, INC., et al., Appellants, *v.* THERESA PORRATH et al., as Copartners Doing Business under the Name of THE SAMPLE SHOP, Respondents.

Fourth Department, February 16, 1973.

*Kavinoky, Cook, Hepp, Sandler, Gardner & Wisbaum* (*Arnold B. Gardner* and *Joseph E. Zdarsky* of counsel), for appellants.

*Runals, Broderick, Shoemaker, Rickert, Berrigan & Doherty* (*Clarence R. Runals* of counsel), for respondents.

GOLDMAN, P. J. In this action appellants, The Sample, Inc. and The Sample of Buffalo, Inc., appeal from a judgment denying their application for a declaratory judgment permitting them to use the trade name "Sample" in connection with a proposed new retail outlet in the Town of Wheatfield, Niagara County, New York. The order denying appellants this requested relief granted the respondents, Theresa Porrath, Samuel Porrath, Dorothy Gellman and Samuel Gellman, copartners doing business under the firm name of The Sample Shop, a permanent injunction restraining appellants from using the name "Sample" in any business operation to be conducted within the City of Niagara Falls and the Towns of Niagara, Wheatfield, Lewiston and Porter in the County of Niagara.

The history of the business activities of the parties, their methods of operation, the territorial markets they serve and much pertinent data were fully presented to the trial court. It appears from the proof that the Buffalo based "The Sample, Inc." was established in 1929 and has advertised in Buffalo papers under the trade name "The Sample" since its founding. In its early days it specialized in the sale of women's apparel but over the years has expanded greatly the variety of merchandise offered for sale and now includes men's as well as women's clothing and in addition thereto operates other departments such as jewelry, ladies' shoes and fabrics, children's wear and many other commodities. "The Sample, Inc." opened its first branch store outside of Buffalo in the City of Lockport, Niagara County, in 1946 and now operates in nine locations in Western New York, two of which are in Niagara County. Each branch store is a separate, wholly-owned subsidiary corporation. The parent corporation had net sales in 1971 in excess of $10,600,000 with more than $1,350,000 produced by the two Niagara County stores. Over

61,500 persons hold charge accounts with " The Sample, Inc." and 7,200 of these customers live in Niagara County. Appellants have spent $2,165,461 for advertising under the name " The Sample ", spending almost as much in 1971 as respondents have in the last 23 years. This advertising has appeared primarily in two large Buffalo newspapers, which have a circulation of over 25,000 in Niagara County and appellants have also advertised extensively in the *Lockport Union Sun and Journal* and the *Tonawanda News,* both of which are largely distributed throughout Niagara County.

Respondents operate two stores, the first of which was opened in 1934 in Niagara Falls under the name " Sample Dress Shop ". These stores which had net sales of $678,000 in 1971 stock primarily women's apparel and do not offer for sale such items as men's wear and the various other merchandise which is sold in " The Sample, Inc." stores. Since 1948 respondents have spent a total of $311,000 in advertising, almost entirely in the *Niagara Falls Gazette.* The primary market of the two stores is in the City of Niagara Falls and the four towns surrounding the city.

The store which appellants desire to open would be located in the Summit Park Mall in the Town of Wheatfield in Niagara County, one and a half miles from one of respondents' stores. They propose to name it " The Sample Shop of Buffalo, Inc.". Appellants have offered to call the store by any other name, which includes the word " Sample ", such as the " Bunis (family name of principal stockholders) Sample Shop ", or any reasonable and distinguishing name so long as it includes the word " Sample ". Appellants have demonstrated a willingness to select a name which will eliminate any conflict with respondents' " The Sample Shop ".

An in-depth market survey by National Marketing Associates, Inc. was put into evidence by appellants. It indicates that women in the 18-50 years age group who live within a five mile radius of the Summit Park Mall are more likely to associate the word " Sample " with a store operated by appellants than one owned by respondents. The market data contained in the survey clearly show that a substantial majority of persons interviewed, when asked to identify a store operated under the names " The Sample " or " Sample Shops ", responded by indicating the store owned by appellants.

The trial court found that respondents' name, " The Sample Shop ", has " acquired a secondary meaning identifying in the minds of the public " the two stores operated by respondents in the City of Niagara Falls. It further found " that the public

would be confused and deceived by plaintiffs' use of the word 'Sample'" and that there "is a likelihood of dilution of the distinctive quality of defendants' trade name by plaintiffs' use of the word 'Sample' as a part of a corporate or assumed name". The trial court concluded from its findings that appellants are not entitled to judgment declaring their right to operate the new store under the name "The Sample of Buffalo, Inc." and granted judgment to respondents restraining and enjoining appellants from the "use of the word 'Sample' as part of a corporate or assumed name". We find this determination to be against the weight of the evidence.

The preponderance of the evidence supports appellants' contention that a majority of potential customers of both parties are more likely to associate the word "Sample" with a store operated by appellants rather than one operated by respondents. The uncontradicted data of the market survey and the history of the business activities of both parties show that respondents' business name has not acquired a secondary meaning and that the greater likelihood is that appellants' name, "The Sample, Inc.", has gained such a secondary meaning in the minds of the purchasing public.

In the determination of the issue here presented, the overriding objective is to promote and protect the concept of commercial fairness. Unfair competition and trade-mark infringement are all unique in their particular factual patterns and each case should be decided "on its facts", and because of incompatibility there cannot be strict adherence to precedents (*Dell Pub. Co.* v. *Stanley Pub.*, 9 N Y 2d 126, 133).

The principle of commercial fairness is well enunciated by the United States Court of Appeals of the First Circuit in *Food Center* v. *Food Fair Stores* (356 F. 2d 775). In that case a Massachusetts retail supermarket carried on business under the name "New England Food Fair". It sought to enjoin the defendant, the nation's fifth largest chain of grocery supermarkets operating in 15 States under the name "Food Fair", from operating under its name in the Massachusetts area. The District Court found that the plaintiff's name had acquired a secondary meaning in greater Boston and to some extent in other parts of Eastern Massachusetts. In vacating the judgment of the District Court the Circuit Court said (p. 779) "In attempting to apply principles and precedents to the facts of this case, we recognize at the outset that the field of protection of trade names is part of the wider domain of the law relating to unfair competition, where the overriding objective of courts and legis-

latures is that of commercial fairness ". As in the case at bar in the use of the word " Sample " the court found that the name " Food Fair " was not of the strongest order of originality. The Federal court concerned itself, as we should, that the public be not disadvantaged by confusion of names and set forth specific recommendations as to territory and operation to avoid confusion. In the case at bar all that is required is the adoption of a name by appellants which will clearly identify appellants' store and distinguish it, in the minds of the public, from respondents' stores. This we believe is accomplished by using the word " Buffalo " in appellants' name.

Succinctly stated, the paramount question is whether the acts complained of are fair or unfair (*Fisher* v. *Star Co.*, 231 N. Y. 414, 427; *Food Center* v. *Food Fair Stores, supra*). No longer is it the law that the protection of a business name depends primarily upon whether that name has acquired a secondary meaning (*International News Serv.* v. *Associated Press*, 248 U. S. 215, 235, 237). If it is demonstrable and clear from the record that the acts of one charged with usurpation of another's commercial name are actually unfair, equitable principles become operative. What equity will not tolerate is the appropriation of another's business name together with the exploitation and the grasping for enjoyment of the benefits of another's labor and effort, when the latter has culminated in a special quality being attached to the particular name (*Tiffany & Co.* v. *Tiffany Prods.*, 147 Misc 679, 681, affd. 237 App. Div. 801, affd. 262 N. Y. 482; *Miles Shoes of New York* v. *Niles Bootery*, 235 App. Div. 575, app. dsmd. 260 N. Y. 566; *Long's Hat Stores Corp.* v. *Long's Clothes*, 224 App. Div. 497).

The issue of trade name infringement was not decided by the trial court because neither party had taken any action concerning the matter for many years. The court found that there were two separate and distinct market areas; that the trade name of both parties had acquired a secondary meaning in their particular area; each entity was entitled to protection in its own specialized area; the public would be confused and deceived by the appellants' use of the word " Sample " at the store at Summit Park Mall; there was a likelihood of diluting the distinctive quality of the respondents' trade name; there would be little disadvantage to the appellants if they were unable to use the word " Sample " in the name of their new store; and by using the name the appellants would be taking advantage of the goodwill associated with the word " Sample " and established by the respondents.

Secondary meaning has been defined as the trade meaning which may attach to a particular market because its user has expended time and money in the promotion of the market (*Jewel Tea Co.* v. *Kraus,* 88 F. Supp. 1003). Where a business name acquires a special significance pointing to only one business enterprise in a certain locality, it is protected from use by another in the same area (*Matter of Playland Holding Corp.* v. *Playland Center,* 1 N Y 2d 300). The concept of secondary meaning is that a name has become so identified with a particular business that it exclusively signifies only that one particular business (*Germanow* v. *Standard Unbreakable Watch Crystals,* 283 N. Y. 1; *G. & C. Merriam Co.* v. *Saalfield Pub. Co.,* 198 F. 369; 238 F. 1, cert. den. 243 U. S. 651; *Fawcett Pub.* v. *Real Confessions,* 22 Misc 2d 738, affd. 272 App. Div. 867). Priority of use alone is not equivalent to acquisition of that special significance which entitles a trade name to protection against infringement (*Schwartz* v. *Hampton,* 30 Misc 2d 837, affd. 16 A D 2d 915; *Food Center* v. *Food Fair Stores,* 356 F. 2d 775, *supra*).

The respondents have not met the burden of establishing the existence of a secondary meaning for their trade name " The Sample Shop " and this they must do in order to restrain appellants from using that trade name. The results of the consumer attitude study conducted at the request of appellants are entitled to probative weight (*People* v. *Franklin Nat. Bank of Franklin Sq.,* 200 Misc. 557, 566, revd. on other grounds 281 App. Div. 757, mod. 305 N. Y. 453, revd. on other grounds 347 U. S. 373; *Seven-Up Co.* v. *Green Mill Beverage Co.,* 191 F. Supp. 32; *Texas Aeronautics Comm.* v. *Braniff Airways,* 454 S. W. 2d 199 [Texas], cert. den. 400 U. S. 943; Public Opinion Surveys as Evidence: The Pollsters Go to Court, 66 Harv. L. Rev., 498, 503; Zeisel, The Uniqueness of Survey Evidence, 45 Cornell L. Q., 322; Ann. 76 ALR 2d 619, Public Survey or Poll). This study demonstrated that many more consumers were aware of the appellants' name than that of the respondents. This awareness no doubt emanates from the considerable advertising carried on by the appellants in and by all of the media. This awareness also mitigates against a finding that the business name of respondents has acquired a secondary meaning either in the respondents' limited geographical area or within the metropolitan area constituting Buffalo and Niagara Falls in Erie and Niagara Counties.

The finding that the appellants will be taking advantage of the goodwill associated with the name " Sample " and established by the respondents is not supported by the record. The consumers

in the Summit Park Mall area relate the name "Sample" to the Buffalo based retail stores more than to the Niagara Falls based stores. This identification probably stems from the advertising of the word "Sample" in connection with appellants as early as 1929.

The record fails to establish that the appellants' use of the word "Sample" would deceive the public and dilute the distinctive quality of respondents' name. The facts are that the public identifies the name "Sample" with the appellants rather than with the respondents or at least it cannot be said on this record that the identification is more in favor of respondents than the appellants.

Finally, a finding that the use of a different name would result in little disadvantage to appellants is not valid. The name associated with the Buffalo stores has acquired singular significance through substantial advertising expenditures. That the new store would be deprived of that name is of no little consequence and would be detrimental to successful operation.

There is no inkling of bad faith on the part of the appellants or of any intention to deceive and confuse the public and to identify the respondents' products with the appellants. Of course, an injunction will issue to prevent any activity calculated to impair the value of a trade name or to deceive the public (*Forsythe Co.* v. *Forsythe Shoe Corp.*, 234 App. Div. 355, 358). The appellants are not attempting to trade on the goodwill of the respondents' distinctive name so that there is a misappropriation of a property right belonging to another (*Tiffany & Co.* v. *L'Argene Prods. Co.*, 67 Misc 2d 384, 388). There may possibly be some confusion as a result of the use of appellants' name in the Summit Park Mall but we must look at the over-all picture, and it is quite clear that neither party has any manifestly superior claim to the name "Sample". The most equitable solution to this controversy is to allow the use of similar but not identical names so that both stores may use the word "Sample". By such a disposition the interests of all parties will be protected and commercial fairness will be achieved.

The judgment below should be reversed and judgment entered declaring that the appellants may operate a retail store in the Summit Park Mall, in the Town of Wheatfield, Niagara County, New York, under the name "The Sample of Buffalo, Inc.".

DEL VECCHIO, WITMER, CARDAMONE and SIMONS, JJ., concur.

Judgment unanimously reversed on the law and facts with costs and judgment declared in favor of plaintiffs in accordance with opinion by GOLDMAN, P. J.