I. H. T. CORPORATION, Plaintiff,

v.

SAFFIR PUBLISHING CORP. and the
Trib New York, Inc., Defendants,

v.

INTERNATIONAL HERALD TRIBUNE,
S. A., New York Herald Tribune, Inc.,
and the New York Times Company,
Counterclaim-Defendants.

No. 77 Civ. 4177 (CHT).

United States District Court,
S. D. New York.

Feb. 3, 1978.

Hall, McNicol, Hamilton & Clark, New York City, E. Douglas Hamilton, New York City, of counsel, for plaintiff.

Miskin & Sutton, New York City, Howard C. Miskin, Martin G. Raskin, Natanson, Reich & Barrison, New York City, of counsel, for defendants.

## MEMORANDUM

TENNEY, District Judge.

On April 24, 1966 the venerable *New York Herald Tribune* ceased publication, yet another victim of a lamentable epidemic of business failures which decimated the ranks of New York City newspapers. Now, over a decade later, litigation has arisen over the use of the name "The Trib" by a fledgling New York metropolitan area daily paper unrelated to the old morning companion. Plaintiff, I. H. T. Corporation ("I. H. T."), purports to be the successor entity to various intermediate assignees of the assets of the now-defunct *New York Herald Tribune* and other publications and is presently a 36⅝% shareholder in a French corporation, International Herald Tribune, S. A., the publisher of a daily newspaper of the same name published and widely circulated abroad. I. H. T. claims rights to the trademarks "New York Herald Tribune" and "Herald Tribune," the latter currently in use as part of the international newspaper title and the former in the title of a regularly published crossword puzzle magazine. Complaint ¶ 21. I. H. T. also claims rights in the abbreviated form of "Tribune," *i. e.*, "Trib," these rights deemed to flow from a protectible secondary meaning which allegedly arose from years of use of the term "Trib" by the readers of both the New York and international editions.

To the allegations of statutory and common law trademark infringement, unfair competition and misappropriation, the defendant corporations, Saffir Publishing Corp. and The Trib New York, Inc. (hereinafter referred to singly as *"The Trib"*)[1] asserts complete freedom from liability and offers numerous affirmative defenses. In synopsis, the defendant questions the validity and actual ownership of the registered trademark "Herald Tribune"; contends that whoever owned the trademark rights abandoned them when it discontinued publication of the New York newspaper and for certain other reasons; disputes the possibility of confusion between use of "The Trib" as the identifying mark of a New York City daily newspaper different in format and style from a long-gone publication and use of the name "The New York Herald Tribune" as the mark of a crossword puzzle book; and alleges that the *International Herald Tribune* is not known as "Trib" in this market, if anywhere, that its sales here are *de minimus*, and that no possible confusion in the newspaper market can result from the circulation in New York of *The Trib*. Moreover, *The Trib* has counterclaimed against the plaintiff and others charging conspiracy in violation of the federal and New York antitrust laws and conspiracy to assert fraudulently procured trademarks.

Plaintiff I. H. T. has now moved this Court for preliminary relief to enjoin the use of the name "The Trib" by the new daily journal. In response to this motion, *The Trib* has asserted the substantive defenses summarized above and also claims laches on the part of the plaintiff. For the reasons to follow, the motion for a preliminary injunction is denied.

 The standard for the issuance of a preliminary injunction in this circuit is familiar, clear and exacting. The formula requires a showing of either "(1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of

---

1. The named defendant corporations identify themselves as "one and the same entity." Answer and Counterclaims at 1.

hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in the original). Although the alternative *Sonesta* tests normally require at least a limited inquiry into the merits of the action, at the threshold is the principle that the plaintiff has a basic obligation, regardless of the strength of his case on the merits, "to make a clear showing of the threat of irreparable harm. That is a fundamental and traditional requirement of all preliminary injunctive relief, since equity cannot intervene where there is an adequate remedy at law." *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976) (citations omitted).

I. H. T. has utterly failed to demonstrate such harm or even the threat of it; indeed, it seems to have raised the issue only in the most desultory way. I. H. T. claims that there will be direct competition between *The Trib* and the *International Herald Tribune*, particularly in procuring advertising contracts for the latter. Complaint ¶ 18. However, I. H. T. does not refute *The Trib*'s assertion that out of a world-wide circulation of about 160,000 only about 550 copies of the *International Herald Tribune* are sold in the New York metropolitan area each day. Affidavit of Leonard Saffir, sworn to January 3, 1978, ¶ 37 ("Saffir Affidavit"). As to competition for advertising dollars, although I. H. T. asserts that "[t]he INTERNATIONAL HERALD TRIBUNE receives advertising from the Metropolitan area alone amounting to approximately $2,500,000 per year," Affidavit of Walter N. Thayer, sworn to December 6, 1977, at 8 ("Thayer Affidavit"), there is no corollary assertion—nor can one logically be made—that moneys spent to advertise in a newspaper circulated in the main outside the United States (and almost totally outside New York) will be diverted to a metropolitan daily. Furthermore, any such hypothesis would be weakened by the fact that the *International Herald Tribune* has an advertising salesman in Chicago, the home of the *Chicago Tribune*, Saffir Affidavit ¶ 39; I. H. T. makes no allegation that the Chicago circumstance impinges on the advertising revenues for the international daily. Finally, and fatally to this motion, there is no assertion whatever—much less proof—that if I. H. T. ultimately prevails its damages would be incalculable or that *The Trib* could not respond monetarily.

Without any showing of even the possibility of irreparable injury the plaintiff's request for preliminary relief must fail by either alternative of the *Sonesta* test. However, it should not go unmentioned that "possible irreparable injury," had it been demonstrated, would have been sufficient for injunctive relief only if plaintiff had completed that second term of the dual *Sonesta* equation which depends substantively on a showing by the movant of "probable success on the merits." It would not be correct for the Court to leave the impression that plaintiff has met this burden. On the contrary, there are quite serious questions going to the merits in this case which may, for convenience, be divided into two categories: rights in the mark, and protectibility of the abbreviation.

### Rights in the Mark
#### Claim of Title

I. H. T. asserts rights to the marks "New York Herald Tribune" and "Herald Tribune" (Registration Nos. 928,318 and 928,766). That assertion is based, however, on a chain of title weakened by what might be charitably called a slipshod handling of registration detail. In the period preceding 1969 the marks were held by a series of entities, some incorporated in New York and some in Delaware. The marks were "inadvertently" permitted to lapse in that year. Thayer Affidavit 4. New registrations did. not issue from the United states Patent and Trademark Office until February 1972, although it is alleged that application was made in 1970. Affidavit of E. Douglas Hamilton, sworn to December 8, 1977, at 6. Patent Office records reveal that both 1972 marks were registered in the name of "New York Herald Tribune Inc. (New York corporation), doing business as W. C. C. Publishing Co., Inc.," Registration

Nos. 928,318 and 928,766, appended as Exhibits 1 & 2 to Affidavit of Howard C. Miskin, sworn to January 3, 1978 ("Miskin Affidavit"). "W. C. C. Publishing Co., Inc." was plaintiff I. H. T.'s name from 1966 to 1973. Thayer Affidavit 2. New York Herald Tribune, Inc. was, at the time the 1972 trademarks were issued, a completely dormant corporate entity, and it remains so to this day, having no officers, doing no business, etc. *Id.* at 6. Furthermore, at the time the current trademark application was filed, New York Herald Tribune, Inc. swore that the mark adopted identified "publications, namely newspapers, magazines and books," Defendant's Memorandum in Opposition to Plaintiff's Motion at 24, despite the fact that at the time the marks were applied for or issued the New York daily was gone, the *International Herald Tribune* was being published by a French corporation, Saffir Affidavit Exh. 19, and no other newspaper was being published by, or under the direct control of, the plaintiff, its predecessor, or the phantom New York corporation.

This odd history of the 1972 registrations provides the defendant with some ammunition to challenge the rights of the plaintiff in the mark. First, the fact that the registrant of the marks is a New York corporate "shell" and not this Delaware plaintiff leads the defendant to assert that I. H. T. is not qualified to bring the suit at all, having failed to show that it is the "real party in interest" by the terms of Rule 17 of the Federal Rules of Civil Procedure. Second, the defendant questions whether the current registration was taken in good faith, alleging that no newspaper was then being published by the registrant or, for that matter, by any other corporate party in the somewhat Byzantine collective representing the remains of the defunct New York newspaper and having an interest in the live international edition.

To these charges plaintiff responds that misidentification of the state of incorporation of the trademark owner was remediable error and made without that intent to defraud which would strip the registrant of entitlement under 15 U.S.C. § 1115(b)(1).

*See Wrist-Rocket Mfg. Co. v. Saunders Archery Co.,* 516 F.2d 846 (8th Cir.), *cert. denied,* 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975). This may well be, but serious questions arise as to the protection afforded newspapers by the current registration, whether viewed as a "renewal," as I. H. T. insists, or deemed a new registration. Renewal of a trademark is governed by 15 U.S.C. § 1059, which states that renewal may be obtained for a twenty-year period by the filing of a verified application "setting forth those goods or services recited in the registration on or *in connection with which the mark is still in use in commerce* . . . or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark." (Emphasis added). Assuming arguendo that the registrant of this mark met the time constraints for renewal prescribed in section 1059, there is certainly a question whether the "renewal" covered any newspaper then in commerce as the product of the registrant or even of any other corporation for which it was inadvertently substituted in the registration process, and there is no evidence proffered to show that any nonuse as to newspapers was explained or excused. If on the other hand, it is ultimately shown that the current trademarks were not renewals at all, then the registration covering "newspapers" might well run afoul of the basic principles that there must be prior bona fide usage in trade to support the issuance of a valid trademark, *Blue Bell, Inc. v. Jaymar-Ruby, Inc.,* 497 F.2d 433, 437 (2d Cir. 1974), and that a trademark may not be registered to reserve it for future use. *Blue Bell, Inc. v. Farah Manufacturing Co., Inc.,* 508 F.2d 1260 (5th Cir. 1975).

*Abandonment*

Beyond questioning the bona fides of the registration, defendant also argues that the claimed mark has been abandoned insofar as it applies to a New York newspaper. It is true that nonuse for a period of two consecutive years constitutes prima facie abandonment under 15 U.S.C. § 1127;

abandonment is not merely a matter of nonuse, however, but also of specific intent to abandon. *Hanover Milling Co. v. Metcalf,* 240 U.S. 403, 419, 36 S.Ct. 357, 60 L.Ed. 713 (1916). That intent, like any other, may be inferred, of course, but the claimant may also be able to rebut the inference: " 'Acts which, unexplained, would be sufficient to establish an abandonment, may be answered by showing that there never was an intention to give up and relinquish the right claimed.' " *Baglin v. Cusenier Co.,* 221 U.S. 580, 598, 31 S.Ct. 669, 674, 55 L.Ed. 863 (1911).

I. H. T. naturally asserts lack of intent to abandon. Thayer Affidavit 8. Defendant counters that such intent has been demonstrated and, in addition, that the trademark registrant had constructively abandoned at some point in the past by granting either a naked license to others to use the protected mark or by acquiescing in its unsupervised use. The first of these assertions rests on (1) the twelve-year nonuse of the mark in connection with a New York newspaper, (2) the fact that at the time of the demise of the *New York Herald Tribune* its then editor-in-chief and publisher wrote publicly that the newspaper had come to its "final daily edition" and that readers would see the journal "for the last time," Editorial by John Hay Whitney, published April 22, 1966, Saffir Affidavit Exh. 12b, and (3) the absence of any assertion by I. H. T. that a revival of the *New York Herald Tribune* was contemplated at any point in the past or is planned for the future. Certainly these circumstances raise at least a colorable issue on the question of abandonment. *See Duff v. Kansas City Star Co.,* 299 F.2d 320 (8th Cir. 1962); *American Photographic Pub. Co. v. Ziff-Davis Pub. Co.,* 135 F.2d 569 (7th Cir. 1943).

The defendant's assertions of forfeiture are based on the purported permissive and uncontrolled use of the word "Tribune" in an ill-fated New York daily entitled *"World Journal Tribune"* which was published from September 1966 to May 1967 and on plaintiff's acquiescence in the current use of the mark "Herald Tribune" in the international daily in which it has ownership interest but which it does not publish. Suffice it to say that these issues would be open to proof under the standard that permissive or acquiescent use of a trademark by another without control by the registrant may work an abandonment of the mark. *See Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358, 367 (2d Cir. 1959).

### *Protectibility of the Abbreviation*

Defendant has also raised a significant argument concerning the plaintiff's right in the contraction "Trib" (assuming, arguendo, that it proves its ownership in the expanded, registered form). There is little doubt that under proper circumstances a partial or abbreviated form of a registered mark, having acquired in the mind of the public "secondary meaning" because of association with a particular product or firm over the years, is entitled to protection. *See Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495 (2d Cir. 1962); *Atlantic Monthly Co. v. Frederick Ungar Pub. Co.,* 197 F.Supp. 524 (S.D.N.Y.1961); *Metropolitan Opera Ass'n v. Metropolitan Opera Ass'n of Chicago,* 81 F.Supp. 127 (S.D.N.Y.1948). However, in all of these cases, the goodwill of a currently available product or service was being infringed by the junior user's adoption of the mark. In the case before this Court plaintiff has adopted an abbreviated form of an undisputedly generic or descriptive term for newspapers: over two hundred and fifty newspapers having "Tribune" in their names are currently published in the United States, and the abbreviation "Trib" is commonly employed to refer to at least two major users of the longer form of the name, i. e., the *Chicago Tribune* and the *Oakland Tribune.* Saffir Affidavit ¶¶ 25–28 & Exh. 16a. In order to establish protectible secondary meaning the plaintiff must demonstrate that "the consumer, having acquired confidence in the quality of a particular product through usage, is entitled to protection against imitations marketed by other producers." *Ralston Purina Co. v. Thomas J. Lipton, Inc.,* 341 F.Supp. 129, 133 (S.D.N.Y.1972). Whether this standard even ap-

plies to a senior user of a trademark whose competing product is now long vanished from the marketplace is problematical. Moreover, this Court seriously questions whether the plaintiff can establish secondary meaning for "Trib" in the New York metropolitan area based on common usage of that abbreviation in connection with an international newspaper whose sales here are minimal or based on a crossword puzzle book which plaintiff does not even assert is referred to as "Trib."

 For all of the reasons stated, plaintiff I. H. T.'s motion for a preliminary injunction is denied.

So ordered.