**CONTINENTAL CORRUGATED CONTAINER CORP., Plaintiff,**

v.

**The CONTINENTAL GROUP, INC., Defendant.**

**No. 77 Civ. 2616.**

United States District Court, S. D. New York.

Dec. 5, 1978.

Feder, Kaszovitz & Weber, New York City, for plaintiff and counter-defendant; Gabriel Kaszovitz, Murray L. Skala and Aaron R. Cahn, New York City, of counsel.

Karpatkin, Pollet & LeMoult, New York City, for defendant; Michael N. Pollet and Steven Delibert, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The plaintiff in this case, the Continental Corrugated Container Corporation, has sued the defendant for trademark infringement and unfair competition. The case was originally filed in New York State Supreme Court, but it was removed to this court pursuant to 28 U.S.C. § 1338(a) because the cause of action could have been pleaded under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff seeks injunctive relief, return of profits unjustly accumulated by the defendant, and damages. The defendant, the Continental Group, has moved for summary judgment dismissing the complaint and for an order precluding the plaintiff from offering evidence. The plaintiff has made a cross motion for summary judgment on its complaint and for dismissal of defendant's counterclaim. Plaintiff has also requested an order limiting pre-trial examination of its representatives. 

Based upon the pleadings, affidavits, answers to interrogatories, and stipulated facts,[1] the defendant's motion for summary judgment dismissing the complaint and plaintiff's motion for summary judgment dismissing defendant's counterclaim are granted. In view of this disposition of the substantive motions, the remaining motions regarding discovery are denied.

*Background*

Plaintiff is a small manufacturer of corrugated paper containers that was originally based in Brooklyn and now operates from a plant in New Jersey. It had gross sales of $5,000,000 in 1977, the large majority of which were concentrated in New York and New Jersey. It has operated under the name Continental Corrugated Container Corporation since it was incorporated in New York in 1955. Plaintiff's advertising has consisted of circulating to customers and potential customers fliers and price lists on its letterhead, journal advertisements in local religious publications, listing of its name in the "Official Container Directory," and telephone listings in the cities where its offices are located. Expenditures on advertising have totaled approximately $7,500 per year.

Defendant, on the other hand, is a major national manufacturer of packaging goods that incorporated in New York in 1913 as

---

1. While the current motions were pending, the parties filed a joint Pre-Trial Order at the request of the court. At oral argument the parties agreed that the stipulated facts contained in that Order should be considered in ruling on the instant motions.

The Continental Can Company, Inc. It began manufacturing corrugated packaging in 1956, and it has used the words "continental corrugated" in connection with this operation at least since 1968 when it adopted that term as the name for one of its manufacturing divisions. The defendant advertises in national publications such as Time, Life and Newsweek as well as in newspapers of general circulation including the Wall Street Journal. Defendant's overall expenditures on advertising have exceeded one million dollars annually since the mid-1970's, though it is unclear how much of this total is related to the promotion of corrugated containers.

Plaintiff's argument is based upon its status as first user of the term "continental corrugated." It contends that it is entitled to protection at least under New York's unfair competition law since the parties are in direct competition and actual confusion has resulted. It is plaintiff's position that it need not show either that defendant had predatory intent or that the words "continental corrugated" as used by plaintiff have acquired secondary meaning. Finally, plaintiff argues that its rights in the trademark were sufficiently established through the informal use of the term by plaintiff's salesmen and customers.

Plaintiff has submitted three items of evidence in support of its claim. First, plaintiff's president alleges that a company salesman received an inquiry from one of his customers asking whether the plaintiff corporation had been acquired by the defendant. A solicitation of the customer by one of the defendant's sales representatives triggered this inquiry. The second incident involved a complaint by one of plaintiff's customers about an apparent price rise. In fact, the price hike had been announced by the defendant, not the plaintiff, on letterhead clearly identifying the source. Finally, plaintiff had submitted as an exhibit a photocopy of a label on one of the defendant's cartons displaying the designation "continental corrugated" without any other words identifying the manufacturer. However, the parties agree that they know of no instance of misdelivered communications nor of goods mistakenly ordered from the wrong company.

In response to plaintiff's claim, defendant asserts that the plaintiff corporation has no rights whatsoever in the term "continental corrugated" because (1) a party cannot claim trademark rights in a mark that it has never used, and plaintiff has never used these words standing alone; and (2) an abbreviation of a trade name is not entitled to protection, at least where the party claiming protection has not formally used that abbreviation. Defendant also argues that plaintiff's claims of infringement and unfair competition must be rejected because the term "continental corrugated" is not a registered trademark and plaintiff cannot show that the words have acquired the requisite secondary meaning. Further, it is argued that the difference in size between the corporate parties and the history of defendant's use of the mark are factors that counter any allegation that the defendant acted with predatory intent. Defendant also contends that the possibility of confusion in a market where buying is done by company purchasing agents is minimal. Finally, defendant raises a counterclaim asserting that its prior use of the term "continental" in connection with packaging goods entitles it to protection against plaintiff's adoption of the word as part of its trade name.[2]

Defendant has submitted affidavits and exhibits in support of its legal arguments. Its evidence shows that all printed materials circulated by plaintiff bear its full corporate name rather than the words "conti-

---

**2.** Both parties also argue that the other's claims should be barred by laches. In addition, defendant contends that plaintiff is not entitled to obtain relief under New York statutory law because plaintiff itself is in violation of § 131 of the General Business Law which requires all businesses to display their corporate name on the exterior of their premises. Because the motions before the court are disposed of on other grounds, none of these contentions need be addressed.

nental corrugated" standing alone.[3] Answers to defendant's interrogatories indicate that plaintiff's public advertising is minimal, negating any implication that plaintiff's use of "continental corrugated" has acquired secondary meaning. Defendant has also introduced evidence tending to show that there is little likelihood of confusion between its products and those manufactured by plaintiff. For example, defendant has promulgated corporate guidelines that direct its divisions, including Continental Corrugated, to use the company's distinctive logo (three concentric "C's") and/or the official corporate name whenever the name of a division is displayed. Defendant has also attempted to rebut any charge of predatory activity by pointing out that its adoption of the words "continental corrugated" was a natural extension of an image-building scheme in which the names of all of its divisions were standardized.

*Plaintiff's Federal Claims*

Plaintiff's federal claims arise under the Lanham Act. Whether they are characterized as trademark infringement or unfair competition, the governing law is substantially the same. *Mushroom Makers, Inc. v. R. G. Barry Corp.,* 441 F.Supp. 1220, 1234 (S.D.N.Y.1977) (Weinfeld, J.), aff'd 580 F.2d 44 (2d Cir. 1978); *National Auto Club v. National Auto Club, Inc.,* 365 F.Supp. 879, 880 n.1 (S.D.N.Y.1973) (Carter, J.). The initial issue facing the court is whether plaintiff can have acquired any trademark rights at all in a name that it has never formally utilized. Plaintiff concedes that it has never used the words "continental corrugated" standing alone in any of its advertising but rather has always displayed its entire official name: Continental Corrugated Container Corp.

The authorities are divided on the question of whether it is possible to acquire trademark rights in the abbreviation of a protected mark merely by customer usage.

One commentator has stated that "the public use is a sufficient substitute for the trademark owner's use." 3 Callman, Trademarks § 77.3. In contrast, an early case in the Court of Appeals of the District of Columbia squarely held that use of an abbreviation by customers in conversation or in written orders for goods gave the manufacturer no rights in that term. *Berghoff Brewing Ass'n v. Popel-Giller Co.,* 50 App. D.C. 364, 365, 273 F. 328, 329 (1921). More modern cases provide protection for abbreviations, but they do so when the manufacturer has encouraged customer usage of a shortened name through its advertising. *See, e. g., Wurzburger Hofbrau Aktien v. Schoenling Brewing Co.,* 331 F.Supp. 497, 500–01 (S.D.Ohio 1971) (plaintiff had used shortened form of name for beer on labels prior to use by defendant); *Volkswagenwerk A. G. v. Brewer,* 170 U.S.P.Q. 560 (D.Ariz.1971) (manufacturer had nurtured use of nickname "Volks" with its advertising campaigns); *Howard Johnson Co. v. Ho-Jo Campsites, Inc.,* 273 F.Supp. 447 (M.D.Fla.1967) (plaintiff had used nickname for some of its products prior to use by defendant); *Nielsen v. American Oil Co.,* 203 F.Supp. 473, 476 (D.Utah 1962) (plaintiff had acquired secondary meaning in nickname "American" in connection with its sale and advertising of petroleum products); *Atlantic Monthly Co. v. Frederick Ungar Pub. Co.,* 197 F.Supp. 524, 529–30 (S.D.N.Y. 1961) (Weinfeld, J.) (plaintiff's magazine had been "designated, advertised and distributed" under its nickname).

█ It is doubtful, then, whether a manufacturer can claim protection for an abbreviation of a trademark that it has never formally used. However, the decision in the instant case need not rest on this ground alone. Under federal trademark law an abbreviation, like any other unregistered mark, will only be protected if it has acquired secondary meaning. *See I. H. T.*

---

**3.** The Pre-Trial Order indicates that there is no dispute as to this fact, but plaintiff refused to include it in the stipulated facts, believing it to be irrelevant. Based on the results of discovery, defendant has alleged that none of plaintiff's printed advertising used the words "continental corrugated" standing alone, and plaintiff has made no effort to refute this allegation.

*Corp. v. Saffir Pub. Corp.*, 444 F.Supp. 185, 189 (S.D.N.Y.1978) (Tenney, J.) (possible that term "The Trib" might qualify for protection if shown to have secondary meaning in newspaper business). In the case at bar plaintiff has not seriously argued that the words "continental corrugated" have developed a secondary meaning.

Secondary meaning attaches to descriptive words when a producer has used them to such an extent that the public identifies the producer or the product with the mark. *Mushroom Makers, Inc. v. R. G. Barry Corp., supra,* at 1226 n.25; *National Automobile Club v. National Auto Club, Inc., supra,* at 884. Absent a finding of secondary meaning, combinations of descriptive terms such as "continental corrugated" are not protected. *Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495, 498–99 (2d Cir. 1962); *National Automobile Club v. National Auto Club, Inc., supra,* at 883–84; *National Color Laboratories, Inc. v. Philip's Foto Co.,* 273 F.Supp. 1002, 1003 (S.D.N.Y.1967) (Mansfield, J.). Here the small scale of plaintiff's operation creates a presumption that a secondary meaning in the nickname cannot be demonstrated. Plaintiff's gross sales are of relatively small magnitude, and distribution is geographically concentrated. Its advertising budget is meager and has been devoted to printing materials that display the full corporate name. Plaintiff, moreover, has apparently not undertaken any market survey that would refute the conclusion that its advertising has been wholly insufficient to develop secondary meaning in the words "continental corrugated."

Furthermore, two factors minimize the possibility of confusion between the plaintiff's goods and the defendant's products. The first is defendant's corporate policy of using the term "continental corrugated" only in conjunction with other identifying marks. *See B & L Sales Associates v. H. Daroff & Sons, Inc.,* 421 F.2d 352 (2d Cir. 1970) (defendant's use of slogan identical to plaintiff's trademark unlikely to cause confusion when defendant accompanied slogan with own trademark). The second is the nature of the market in which these goods are sold. This is not a situation where buyers may be easily confused while making impulse purchases. The customers of both the plaintiff and the defendant are purchasing agents for other businesses, not shoppers seeking consumer goods.

The two isolated instances that plaintiff characterizes as "actual confusion" do not vitiate the conclusion that confusion is unlikely here.[4] In the first case, the customer of the plaintiff who expressed dismay at an apparent price rise inexplicably ignored the letterhead that identified the origin of the announcement. Confusion arising out of the carelessness of a customer's employees is hardly compelling evidence. *Mushroom Makers, Inc. v. R. G. Barry Corp., supra,* at 1231–32. In the other instance, the customer who asked if plaintiff had been bought out by defendant did not demonstrate confusion regarding the origin of a product. Rather, his query concerned the type of collateral issue which has very little probative value with respect to the likelihood of confusion. *See Programmed Tax Systems, Inc. v. Raytheon Co.,* 439 F.Supp. 1128, 1131 (S.D.N.Y.1977) (Tenney, J.). Indeed, the stipulation that the parties know of no misdeliveries or erroneous orders emphasizes the insignificance of the examples cited by the plaintiff.

Plaintiff has thus failed to raise a genuine issue of fact with regard to the key elements of its federal claims. Mere prior, informal use of the abbreviation of a trade name does not give the plaintiff a protectible interest in the term. It is therefore appropriate to grant summary judgment dismissing that portion of the complaint that is grounded in federal law.

*Plaintiff's State Claims*

Dismissal of plaintiff's federal cause of action does not automatically preclude

4. For purposes of this motion the court is accepting the affidavits submitted by plaintiff as competent evidence, even though some of the information may be subject to objection as hearsay.

plaintiff from prevailing on its state law claims. In this instance, the complaint alleges that defendant's use of the words "continental corrugated" constitutes unfair competition and trademark infringement in violation of plaintiff's common law rights and its rights under the General Business Law of New York, §§ 133 and 368–d, but the plaintiff has not succeeded in establishing a prima facie case on any of these grounds.

■ Plaintiff's claim to protection under the General Business Law of New York, § 133, fails because no evidence whatsoever has been presented with respect to one necessary element. It is evident from the language of the statute itself that a defendant only violates this section when acting "with intent to deceive or mislead the public." The state courts have consistently reiterated that intent was a necessary element in cases brought under § 964 of the Penal Code, from which § 133 of the General Business Law was derived, *Francois L. Schwartz, Inc. v. S. Schwartz Military Sales, Inc.,* 26 A.D.2d 807, 274 N.Y.S.2d 183, 184 (1st Dept. 1966); *Academy Reproduction Corp. v. Finelli,* 23 A.D.2d 767, 258 N.Y.S.2d 493, 494 (2d Dept. 1965); *Technical Color & Chemical Works, Inc. v. Felkay,* 21 A.D.2d 787, 250 N.Y.S.2d 500 (2d Dept. 1964); and this requirement was not eliminated when the legislature reenacted this section in its current form. *New York v. Bevis Industries, Inc.,* 63 Misc.2d 1088, 314 N.Y.S.2d 60, 65 (Sup.Ct.N.Y.Co.1970).

The cases cited by the plaintiff do not contradict this conclusion. In *Harvey Machine Co. v. Harvey Aluminum Corp.,* 9 Misc.2d 1078, 175 N.Y.S.2d 288 (Sup.Ct.N.Y. Co.1954), the court held that no showing of actual malice was necessary to establish a claim under § 964 of the Penal Law, but at the same time it pointed to factors from which a finding of predatory intent could be fairly inferred. Similarly, in *Material Men's Mercantile Ass'n Ltd. v. New York Material Men's Mercantile Ass'n, Inc.,* 169 A.D. 843, 155 N.Y.S. 706 (1st Dept. 1915), the court found that the evidence warranted an inference that the defendant had

chosen its corporate name with the specific purpose of taking advantage of the good will of plaintiff's long-established business. In the case at bar, no evidence has been presented from which intent to mislead can be implied. Indeed, defendant has presented unchallenged evidence tending to show that it began using the. words "continental corrugated" innocently and in conjunction with a broader corporate policy unrelated to plaintiff's business.

■ Plaintiff's claim based upon New York's anti-dilution statute, § 368–d of the General Business Law, is likewise without merit. The New York Court of Appeals recently construed this statute in *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). There the court noted that the statute extended protection for trademarks beyond that afforded by prior law. 399 N.Y.S.2d at 632, 369 N.E.2d 1162. Even at its farthest reaches, however, this statute would only protect a mark with "distinctive quality:"

> To merit protection, the plaintiff must possess a strong mark—one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution.

*Id.* at 632, 369 N.E.2d at 1166. The court found that "[t]here is nothing in the name 'Allied Maintenance' itself which indicates that it is an inherently strong trade name susceptible to dilution," *id.* at 632, 369 N.E.2d at 1166, and it noted that hundreds of businesses in New York utilize the word "Allied," *id.* at 633, 369 N.E.2d 1162. The dissenting judges argued that "[d]ilution does not occur only in the case of a name that is widely known." *Id.* at 633, 369 N.E.2d at 1167. The minority went on to contend that a specialized business whose trade name is relied upon by a small segment of the public should be protected even in the absence of a showing that the name is inherently distinctive or has acquired a secondary meaning, *id.* at 633–34, 369 N.E.2d 1162, but this argument was rejected by the majority.

The instant case closely parallels the circumstances in *Allied Maintenance.* Here, as there, the plaintiff argues that as a matter of law there is no need to demonstrate the distinctive quality of the mark for which it seeks protection. Here, as there, plaintiff's mark is inherently weak, and no evidence of secondary meaning has been offered to offset this. Therefore, as in *Allied Maintenance,* plaintiff here has failed to establish a prima facie case under § 368–d of the General Business Law.

The plaintiff, then, must rely on the common law if it is to receive any redress in this case. However, federal and state cases alike indicate that a party that is not protected by federal statute or by New York statutory law is unlikely to secure a remedy under the common law. In *Avon Shoe Co. v. David Crystal, Inc.,* 279 F.2d 607, 614 (2d Cir. 1960), for example, the Second Circuit noted that a plaintiff's claim under the common law of New York would be governed by essentially the same principles as its Lanham Act claim. Similarly, in *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc., supra,* the court implied that a plaintiff unable to establish a right to relief under New York's anti-dilution statute would not be entitled to a remedy under the stricter standards of the common law. The court first traced the history of trademark law in New York, noting that the courts had developed the action for unfair competition to supplement the existing infringement action and protect non-technical, common law trademarks and trade names. *Id.* 399 N.Y.S.2d at 630, 369 N.E.2d 1162. The court went on to indicate that the anti-dilution statute at issue in that case was intended to expand trademark protection beyond even that afforded by the unfair competition action. *Id.* at 632, 369 N.E.2d 1162. As indicated above, the plaintiff's statutory anti-dilution claim in the instant case is without merit, and hence its common law claim is necessarily deficient.

This court, however, need not rely solely upon the reasoning of cases dealing with federal or state statutory law, since the state cases specifically grounded in the common law support the conclusion that plaintiff's claim is meritless. The plaintiff has insisted that there is no necessity to show either that the defendant had a predatory intent or that the mark has acquired a secondary meaning. This sweeping characterization of the case law is unjustified. It is true that in *Sample v. Porrath,* 41 A.D.2d 118, 341 N.Y.S.2d 683 (4th Dept. 1973), *aff'd on opinion below,* 33 N.Y.2d 961, 353 N.Y. S.2d 733, 309 N.E.2d 133 (1974), the court acknowledged that a formal showing of secondary meaning is no longer indispensible in all cases. 341 N.Y.S.2d at 687. However, the court went on to say:

> What equity will not tolerate is the appropriation of another's business name together with the exploitation and the grasping for enjoyment of the benefits of another's labor and effort, when the latter has culminated in a special quality being attached to the particular name.

*Id.* at 688. In the instant case, the plaintiff has made no attempt to show that defendant had predatory intent or was "grasping" after business that plaintiff had acquired through use of its trademark. Nor has the plaintiff made more than a bare allegation that its mark possesses any "special quality." In order to show such distinctiveness, a plaintiff must demonstrate either that its mark is an inherently strong one or that it has acquired a secondary meaning. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc., supra,* 399 N.Y.S.2d at 632–33, 369 N.E.2d 1162. Here the mark is a weak one and the plaintiff is incapable of proving secondary meaning.

The older state cases cited by the plaintiff are consistent with the decision in *Sample v. Porrath, supra,* in that they include findings, explicit or implicit, that the protected marks were distinctive. In *Rochester Savings Bank v. Rochester Savings & Loan Ass'n,* 170 Misc. 983, 11 N.Y.S.2d 130 (Sup.Ct.Mon.Co.1939), for example, the court endorsed the plaintiff's argument that "during its long and successful career the words 'Rochester Savings' [had] become associated in the minds of the public with its own institution." 11 N.Y.S.2d at 132. In reaching its conclusion, the court looked to the fact that the plaintiff had been in business more than one hundred years,

while the defendant had only begun its operation six months before the lawsuit was initiated. Similarly, in *Famous Sea Food House, Inc. v. Skouras,* 272 A.D. 258, 70 N.Y.S.2d 702, 705 (1st Dept. 1947), the court found that "plaintiff's name had been widely and extensively advertised and had procured for itself a good will of great value," thus implying that the name had developed secondary meaning.

█ The court's analysis in *Peerless Electric Co. v. Peerless Electric, Inc.,* 206 Misc. 965, 135 N.Y.S.2d 885 (Sup.Ct.N.Y.Co.), is more complex. There the court balanced the strength of the mark against the degree of predatory intent that must be shown before the use of a similar trademark is enjoined. While the court found that exact imitation of the plaintiff's mark obviated the need to show deliberate appropriation of good will, the court nevertheless took account of factors relevant to a finding of secondary meaning such as the plaintiff's business history and its reputation in the industry. Finally, in *Kreisberg v. Wakefield Co.,* 7 Misc.2d 1036, 165 N.Y.S.2d 769 (Sup.Ct.West.Co.1957), the court noted that the plaintiff had expended large sums in advertising, presumably in the process of developing secondary meaning in its trademark.[5]

Plaintiff has thus failed to raise a genuine issue of fact regarding any of the elements that could serve as the basis for its state claims: inherent originality or secondary meaning indicative of distinctive quality in its mark, or predatory intent on the part of the defendant. Dismissal of the state cause of action is therefore appropriate.

*Defendant's Counterclaim*

█ Defendant has contended that because of its prior use of the word "continen-

tal" in connection with "packaging" products, it is entitled to enjoin plaintiff's use of that word as part of its trade name. This contention is without merit. The word "continental" is a geographic term, used descriptively and thus entitled to a low level of protection. *Elgin National Watch Case Co. v. Illinois Watch Case Co.,* 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365 (1901); *Borg-Warner Corp. v. York-Shipley, Inc.,* 293 F.2d 88, 91 (7th Cir. 1961); *National Automobile Club v. National Auto Club, Inc., supra,* at 883 ("national" is "geographic term descriptive in nature" and therefore an exceedingly weak mark); *Armco Steel Corp. v. International Armament Corp.,* 249 F.Supp. 954, 961 (D.D.C.1966) (noting that "continental" is geographic term accorded narrow scope of protection). Defendant's claim to protection is particularly weak both because the term "continental" is already used by at least two more companies in the same industry[6] and because defendant was not the first to use it specifically in relation to corrugated paper products.

█ It may be that the first user of a fanciful mark could claim a right to prevent its use by manufacturers of related as well as identical products. However, a prior user of a common word like "continental" cannot appropriate the term for all products that it might manufacture in the future as well as those to which the trademark initially attached. In this case, defendant's prior use of the word "continental" in connection with the manufacture of cans does not give it the right to prevent another company from using the term for corrugated paper products. Therefore, plaintiff's motion to dismiss defendant's counterclaim is granted.

---

5. The *Kreisberg* case is also relevant because the court observed that the addition of distinguishing words to an otherwise similar trademark would remove the grounds for enjoining the subsequent user. *Kreisberg v. Wakefield Co.,* 7 Misc.2d 1036, 165 N.Y.S.2d 769, 772 (Sup.Ct.West.Co.1957). Injunctive relief is thus inappropriate in the case at bar both because plaintiff always uses its full trade name in its published advertisements and because defendant accompanies its use of the words "continental corrugated" with its own logo or corporate name.

6. As defendant points out, these two companies are the Continental Packaging Corp. of Kenilworth, N.J., and Continental Paper Box, Inc. of Philadelphia.

*Summary Judgment*

█ This is an appropriate case for summary judgment. Plaintiff based its lawsuit on the erroneous assertion that mere prior usage of a trade name coupled with isolated instances of "actual confusion" constitute a sufficient basis for issuance of an injunction. In support of its motion to dismiss, the defendant provided evidence tending to show that plaintiff is unable to prove the elements that could in fact support its claims. In response to the evidence marshalled by the defendant, the plaintiff "may not rest upon mere conclusory allegations or denials." *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978). Plaintiff has failed to carry its burden of providing enough concrete details to raise any genuine issues of fact on the key elements of the infringement and unfair competition claims.

█ The complexity of a case is not necessarily a barrier to summary judgment. *SEC v. Research Automation Corp., supra,* 585 F.2d at 33. This is true even in the area of trademark infringement where a variety of factors are often in issue. *B & L Sales Associates v. H. Daroff & Sons, Inc.,* 421 F.2d 352, 354 (2d Cir. 1970). Indeed, in the latter case the court acknowledged that factual disputes with regard to minor issues need not preclude summary judgment where the disposition of these issues would not outweigh a determination of the critical questions based on obvious inferences from the exhibits. *Id.* at 354. In the case at bar the evidence is sufficient to rule in defendant's favor on all key issues involved in its motion to dismiss the complaint. Likewise, there are no genuine issues of fact that prevent a ruling in favor of the plaintiff on its motion to dismiss the defendant's counterclaim.

This is not a case where the parties would be prejudiced by an inability to present oral testimony of witnesses. For example, this lawsuit does not concern the meaning of a contract, where the need for oral testimony may preclude summary judgment. *Heyman v. Commerce & Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975). Nor is it a case where the intent of the parties has seriously been placed in question. *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir. 1973). Rather, this is a case where the policy underlying the summary judgment rule—a policy favoring the efficient resolution of disputes—may properly be implemented. *See SEC v. Research Automation Corp., supra,* 585 F.2d at 33.

Defendant's motion for summary judgment dismissing the complaint and plaintiff's motion for summary judgment dismissing defendant's counterclaim are granted.

IT IS SO ORDERED.