**LORD JEFF KNITTING CO., INC., Plaintiff,**

v.

**WARNACO, INC., Defendant.**

**No. 84 Civ. 634 (WCC).**

United States District Court, S.D. New York.

Sept. 28, 1984.

**580**

Liddy, Sullivan, Galway & Vaccaro, New York City, for plaintiff; Andrew V. Galway, Arlana S. Cohen, New York City, of counsel.

Amster, Rothstein & Engelberg, New York City, for defendant; Morton Amster, Karen Artz Ash, New York City, and David R. Tobin, Bridgeport, Conn., of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This is an action for alleged infringement of plaintiff's trademark THE MOORS, as applied to men's sweaters, by defendant's use of the trademark MOORINGS on men's sportswear including sweaters, slacks and shirts, and for alleged unfair competition and trademark dilution. Defendant has moved for a summary judgment dismissing the complaint in its entirety on the ground that, as a matter of law, there is no likelihood that confusion would result from the concurrent use by the parties of their respective marks. For the reasons explained hereinafter, the motion is denied.

Summary judgment may be granted only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Friedman v. Meyers*, 482 F.2d 435, 438 (2d Cir.1973). On a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether such issues exist. *Heyman v. Commerce and Industry Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); *Kiki Undies Corp. v. Alexander's Dept. Stores, Inc.*, 390 F.2d 604, 605 (2d Cir.1968). Moreover, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See Heyman, supra*, 524 F.2d at 1320.

It is well settled that in an action for trademark infringement or unfair competition, the crucial issue is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question. *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). As to the nature of

that issue, the leading text in the field states unequivocally:

In the final analysis, the determination that confusion is probable, likely or remote, is a question of law which lies within the exclusive judgment of the court called upon to decide that issue. 3A *Callmann's Unfair Competition, Trademarks and Monopolies* § 20.08 at 31 (4th Ed.1983).

However, the Court of Appeals for the Second Circuit has recently indicated that where the issue is determined at least partly on the basis of non-documentary evidence, it is treated as an issue of fact subject to review on the "clearly erroneous" standard of Rule 52(a) F.R.Civ.P. *Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 254 n. 1 (2d Cir.1982).

In the seminal case of *Polaroid Corp. v. Polorad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), Judge Friendly set forth a list of factors which should be considered in resolving the issue of likelihood of confusion:

Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account.

This list of factors has been refined, supplemented and applied in a long sequence of subsequent decisions, including *Lever Bros. v. American Bakeries Co.*, *supra*; *Mushroom Makers, Inc. v. R.G. Barry Corp.*, *supra*; *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126 (2d Cir.1979), and has been incorporated in the Restatement (Second) of Torts § 717.

In the present case, there is no dispute as to most of these subordinate *Polaroid* factors. For example, defendant concedes that plaintiff's mark THE MOORS is a "strong" one, in terms of its distinctiveness or "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor-Doniger, Inc. v. Drizzle Inc.*, *supra*, 599 F.2d at 1131. Moreover, it is conceded that plaintiff's and defendant's marks are applied to the same types of goods, sold to the same class of customers through similar channels of distribution.

Nor can there be any dispute as to the similarities and differences between the two marks insofar as their appearance and sound are concerned. However, with respect to the meaning or connotation of the marks, the parties not surprisingly take opposing positions. Defendant urges that plaintiff's mark THE MOORS evokes the Scottish countryside, as, indeed, plaintiff's sales literature expressly states, while defendant's mark MOORINGS conjures up strictly nautical imagery. Plaintiff attempts to minimize this difference by pointing out that the verb "moor" also has a nautical connotation.

While the Court may have definite ideas of its own as to whether the difference in meaning between the two marks is sufficient to avoid confusion, the real issue is whether a substantial number of ordinary purchasers would likely be misled as to the source of the goods. The Court, an "inexpert observer," is thus required "to place itself in the shoes of the ordinary purchaser." *Callmann*, *supra*, § 20.08 at 31. Never an easy chore, this is a particularly chancy undertaking on the basis of a documentary record containing little of relevance except the marks themselves and the sales promotional materials.

In an effort to show actual confusion, plaintiff has submitted a letter from one of its retailers, calling attention to defendant's use of its MOORINGS mark. However, the writer of the letter was obviously not confused himself, but merely concerned that prospective purchasers might be.

Nevertheless, plaintiff should be given an opportunity to establish actual confusion if it can.

■ There is also a dispute between the parties as to defendant's good faith in selecting its mark. While there is considerable circumstantial evidence that defendant did not attempt to hitch a free ride on plaintiff's good will, the Court of Appeals for the Second Circuit has repeatedly emphasized that summary judgment is particularly inappropriate where an issue of intent is involved. *See Patrick v. LeFevre, et al.,* 745 F.2d 153, at 159 (2d Cir.1984), and cases cited therein.

■ It thus appears that adjudication of the trademark and unfair competition claims on the basis of the present largely documentary record would not likely survive appellate review.

The claim for dilution under Section 368–d of the New York General Business Law rests upon an entirely different legal theory and involves entirely different factual elements. As the Court of Appeals for the Second Circuit explained in *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 658 n. 14 (1979):

Actions for infringement or unfair competition are designed to redress public confusion or competitive deception. A dilution action, however, protects against "the gradual whittling away of a firm's distinctive landmark." *Allied Maintenance Corp. [v. Allied Mechanical Trades, Inc.], supra,* 42 N.Y.2d [538] at 544, 399 N.Y.S.2d [628] at 632, 369 N.E.2d [1162] at 1166. Thus, as construed by the New York Court of Appeals, § 368–d extends the protection afforded trademarks beyond that provided under the Lanham Act, and creates an entirely separate cause of action designed to check the "cancerlike growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark." *Id. See Continental Corrugated Container Corp. v. Continental Group, Inc.,* 462

F.Supp. 200, 206–07 (S.D.N.Y.1978); Note, 46 Ford.L.Rev. 1315 (1978).

■ Likelihood of confusion, which is the ultimate test of trademark infringement and unfair competition, is not even a necessary element of a cause of action for dilution under Section 368–d:

New York's anti-dilution statute provides:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, *notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.*

N.Y.Gen.Bus.Law § 368–d (emphasis added). Section 368–d's qualifying clause means exactly what its language denotes. Neither competition between the parties nor confusion about the source of products, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 n. 8 (2d Cir.1979), appears to be necessary to state a cause of action for dilution. *Allied,* 42 N.Y.2d at 544–45, 399 N.Y.S.2d 628, 369 N.E.2d 1162.

*Sally Gee, Inc. v. Myra Hogan,* 699 F.2d 621, 624 (2d Cir.1983).

Instead, the two elements of a successful claim for trademark dilution are: (1) a mark that is "truly of distinctive quality"— particularly a "famous" or "celebrated" trademark; and (2) "likelihood of dilution" or "whittling down" of the identity or reputation of the mark. *Id.,* 699 F.2d at 625. Another relevant, even though not indispensable, factor is the "absence of predatory intent by the junior user." *Id.* at 626.

In their submissions, the parties have virtually ignored the dissimilar elements of the dilution claim, lumping it more or less indiscriminately with the infringement and unfair competition claims.

■ Even assuming that plaintiff's mark THE MOORS has acquired sufficient recognition value to merit protection against dilution, there is an obvious issue concerning the likelihood that such value will be diluted as a result of defendant's concurrent use of the mark MOORINGS. And there is again the issue of defendant's intent in adopting its mark, which, as already noted, is an issue ill suited for summary resolution.

Since the parties have estimated that a non-jury trial on the merits of the action will take only three days, it appears that the most efficient course of action is to proceed with such a trial, rather than to grant summary judgment in favor of one party or the other and incur the substantial risk of a reversal on appeal. If it is reversed, the case would have to be tried anyway, but perhaps a year later, after further investment by the parties in their respective marks will make a loss of the case all the more punitive.

The motion for summary judgment is denied.

SO ORDERED.