TIFFANY & COMPANY, Plaintiff, *v.* TIFFANY PRODUCTIONS, INC., Defendant.*

Supreme Court, New York County, March 28, 1932.

* Affd., 237 App. Div. 801; 262 N. Y. ——.

*Gould & Wilkie* [*R. L. von Bernuth* of counsel], for the plaintiff.

*H. William Fitelson* [*Charles H. Kelby* of counsel], for the defendant.

DORE, J. Plaintiff sues to restrain defendant from using the name " Tiffany " in defendant's business. Plaintiff, a New York corporation organized in 1868, successor of a business founded in 1837, in which one or more members of the Tiffany family have been continuously connected from 1837 to the present time, has carried on a widely advertised business in a variety of merchandise, including, especially, diamonds, jewelry and silverware  Plaintiff's trade-marks " Tiffany " and " Tiffany & Co." have been used on its merchandise for many years. They have been registered in the United States Patent Office in twenty-two official patent office classifications and in many States of the Union and foreign countries. In the last forty years plaintiff has done over $350,000,000 worth of business. In the twenty-three years ending April 30, 1931, it has spent $3,574,453.92 for advertising in New York alone. Plaintiff has acquired, both in the United States and elsewhere, a reputation that is unique in character for exceptionally high quality of workmanship and product, and also for integrity and commercial reliability. Defendant is also a New York corporation, incorporated in 1921 under the name of Tiffany Productions, Inc. This name was changed in 1927 to Tiffany-Stahl Productions, and again in 1929 to its present name, Tiffany Productions, Inc. No one with the surname Tiffany is now or ever has been in any way connected with defendant. No connection has been shown between defendant and the name Tiffany, except the arbitrary selection of the name by defendant's incorporators. No explanation whatever has been offered as to how defendant came to adopt and use that name. Defendant's business is the production and distribution of motion pictures. On its motion pictures, in its advertising and on its letter heads defendant has used as an identifying symbol the representation of a diamond with a light radiating therefrom, in conjunction with the name " Tiffany;" a diamond in a ring in connection with the name " Tiffany " on advertising matter, and such phrases as " 20 Gems from Tiffany," " Tiffany, It's a Gem," " Tiffany Presents," " Tiffany Tone," " Controlled by Tiffany," " Tiffany, a world-wide organization," Defendant's name or product was not widely advertised prior to 1925. Since then and up to 1931 it has spent for advertising $1,013,003.97, of which amount $860,000 was spent after January,

1928, when plaintiff made its first protest. Of this last sum $126,979.66 was spent in 1929 and $612,204.57 in 1930. A number of witnesses testified for plaintiff that defendant's motion pictures, marked as indicated above, its programs, electric signs and lobby displays, have in fact caused confusion in their minds and led them to believe that plaintiff was connected with the production of defendant's pictures. The use by the defendant of the name " Tiffany " came to plaintiff's attention only within the past few years, and in January, 1928, plaintiff protested, demanding discontinuance of all further use of the name " Tiffany." Subsequent to plaintiff's protest defendant made two applications to the United States Patent Office, the first on May 9, 1928, for the registration as its exclusive trade-mark of the picture of a gem with the name " Tiffany " (Plaintiff's Exhibit 43-b), and on September 17, 1928, for the registration as its mark of " Tiffany Tone " (Plaintiff's Exhibit 44). Plaintiff filed oppositions. Thereafter defendant withdrew the application for the gem mark. Its application for " Tiffany Tone " was denied. In the meantime this action had been begun in June, 1930. From these facts the conclusion is inescapable that the sole reason for defendant's choice of the name was to trade on plaintiff's reputation and to reap the benefit of the public belief that plaintiff was connected with defendant. Our Appellate Division has properly characterized such practices in its recent decision of *Forsythe Co., Inc.,* v. *Forsythe Shoe Corp.* (234 App. Div. 355, 358): "Almost invariably the selection by a defendant for use in his business of a trade name or mark which has theretofore been used and advertised by another is for the purpose of appropriating its value and reaping the benefit of the labor of him who may have made that name an emblem of quality or of taste, or a symbol of fair dealing. Equity does not shirk from interfering to prevent such spoliation. Names other than plaintiff's there are in plenty which defendant could have selected." In recent years the Federal courts as well as those of this State have enjoined such use of another's name, irrespective of whether there was actual competition between the parties. (*Long's Hat Stores Corp.* v. *Long's Clothes, Inc.,* 224 App. Div. 497; *Armour & Co.* v. *Master Tire & Rubber Co.,* 34 F. [2d] 201; *Yale Electric Corp.* v. *Robertson,* 26 id. 972; *Dunhill of London, Inc.,* v. *Dunhill's Shirt Shop, Inc.,* U. S. Dist. Ct. S. D. N. Y., opinion of Coxe, J., rendered December 30, 1929, — id. ——.) The real injury in such cases of non-competitive products " is the gradual whittling away or dispersion of the identity and hold upon the public mind of the mark or name by its use upon non-competing goods. The more distinctive or unique the mark the deeper is its impress upon the public consciousness and the greater

its need for protection against vitiation or dissociation from the particular product in connection with which it has been used." (Rational Basis of Trade-Mark Protection, 40 Harvard Law Review, 813, 825.) The judgment of the United States Patent Office (Plaintiff's Exhibits 44, 44-a, 44-b) that the phrase " Tiffany Tone " as used by the defendant was likely to cause confusion in the mind of the public, while not conclusive, is evidence which is entitled to considerable weight on the issue of confusion. Defendant, in its amended answer, has set up the affirmative defense of laches, the burden of proving which is on defendant. (*Wetzlar* v. *Wood*, 143 App. Div. 311, 315; *St. Vincent's Orphan Asylum* v. *Madison-Warren Corp.*, 225 id. 379; *Collins* v. *Burr*, 209 id. 116.) This burden the defendant has failed to sustain. There is no satisfactory evidence that plaintiff led defendant into believing that plaintiff consented to the use of its name in connection with defendant's business. The plaintiff has been protesting against the defendant's employment of its name since the month of January, 1928, whereas the defendant's pictures were not extensively advertised until the year 1925. Mere acquiescence or delay alone, not amounting to an estoppel, does not bar an action for the infringement of a trade-mark or one based on unfair competition, and while acquiescence or delay may be used as a bar to recover for damages, it does not preclude the granting of injunctive relief. (*Menendez* v. *Holt*, 128 U. S. 514.) The efforts of the defendant, in spite of plaintiff's protests, to obtain the registration of the gem or diamond with the surname " Tiffany " as its exclusive trade-mark, aggravate the defendant's wrong in adopting the plaintiff's name for its own business with no colorable reason except the desire to obtain the benefit of the reputation built up by the plaintiff at a great expense over a long period of years. In the light of the many indications to be found in the record that the defendant's selection and continued use of the plaintiff's name were deliberate and conceived in bad faith, its attempt at this time to purge itself by showing that it has recently discontinued the practice of using the diamond and the phrases above enumerated in connection with the use of the surname " Tiffany " is entitled to little consideration. " The owner of a distinctive mark or name invoking the protection of equity for it, obtains thereby no monopoly of goods or services; these may be freely sold on their own merits and under their own trade symbols. All that the plaintiff in such cases asks is the preservation of a valuable · * * * link between him and his consumer, that has been created by his ingenuity and the merit of his wares or services. ' All the rest of infinity is open to defendant.' So limited a ' monopoly ' as that cannot affect legitimate competition, and is of the very essence of any rational system of

individual and exclusive trade symbols." (Rational Basis of Trade-Mark Protection, *supra*, p. 833.) Enjoining this defendant is not determining that plaintiff has a monopoly in the name. This decision reposes on and is limited by the facts in this record, and the record shows that defendant's adoption of the surname " Tiffany " as part of its corporate title, its use of a diamond or a diamond in a ring with the name as trade symbols, its use of the words " gem " and " gems " in connection with a surname which the public associates with jewelry, its effort after plaintiff's protest to secure as its exclusive trade-mark a United States Patent Office registration of a diamond with the name " Tiffany " — these and other acts were deliberately intended to obtain, and in fact did obtain, an unfair advantage for defendant from the good will created by plaintiff in the name. The purpose of these acts was wrongfully and unfairly to appropriate for defendant's pecuniary gain the value plaintiff had created in plaintiff's own name and plaintiff's unique business and financial reputation. Were this relief refused on this state of facts the court, by implication, would put the seal of its approval upon defendant's bad faith and on business tactics that are essentially unfair and involve unfair competition. The affirmative defense of laches is dismissed and judgment directed for the plaintiff enjoining the defendant, its officers, agents and employees from the use of the name " Tiffany " or any similar name or names as part of defendant's corporate name or as a label, designation or mark or otherwise in connection with defendant's business in any manner whatsoever. Present decision containing findings of fact and conclusions of law accordingly, with proposed decree, on two days' notice, at which time counsel for both sides are requested to confer with the court as to stay and date from which decree will be enforced.