The CHAMPION PAPER & FIBRE CO., Plaintiff,

v.

NATIONAL ASSOCIATION OF MUTUAL INSURANCE AGENTS, Defendant.

Civ. A. No. 3062–55.

United States District Court District of Columbia.

Feb. 6, 1957.

Clarence M. Fisher, Washington, D. C., W. Brown Morton, Sr., and Stanton T. Lawrence, Jr., New York City, for plaintiff.

Hubert King, and James Littlepage, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action for an injunction to restrain the infringement of a trademark and unfair competition. Defendant moves to dismiss the complaint at the close of the plaintiff's case.

Plaintiff is a manufacturer of paper and paper products and has been using continuously since 1925 a trademark containing an arbitrary picture of a knight in armor on horseback and the word "Champion" in connection with it. This trademark was registered on March

22, 1927. In 1948 it was modified by the addition of a banner on which the word "Champion" was inscribed. The evidence is ample to the effect that this trademark has been employed continuously since 1925 in connection with the plaintiff's products and its advertising, both direct advertising and advertising in various trade papers and magazines of general circulation; and further that a great deal of money has been spent on popularizing the trademark.

The defendant is an association of insurance agents, and during the past few years has been using as its trademark a similar reproduction of a knight in armor on horseback, although in this instance the banner carried by the knight has inscribed upon it the words "Mutual Insurance". Assuming, however, that the two trademarks are similar, the question arises whether the defendant's use infringes the plaintiff's rights.

The statutory rights as to trademarks are now governed by the Lanham Act, Act of July 5, 1946, which is found in Title 15 of the United States Code Annotated, § 1051 et seq. The remedies for infringement of a trademark are provided by Section 1114 of Title 15, which subjects to an action for an injunction any person who uses without the consent of the registrant any registered trademark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services. In other words, the statutory remedy is limited to cases in which the infringer of the trademark is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of the goods or services. Obviously, there is no possibility of any member of the public of average intelligence being so misled in this instance. No one is likely to think that because the defendant, an association of insurance agents, is using a trademark similar to that of the plaintiff, which is a manufacturer and dealer in paper products, it is affiliated with the plaintiff, or that the plaintiff is engaged also in selling insurance.

It was pointed out by Judge Minton when he was a United States Circuit Judge for the 7th Circuit, in California Fruit Growers Exch. v. Sunkist Baking Co., 166 F.2d 971, that the foregoing provision of the Lanham Act has narrowed to some extent the rules of law bearing on this point under the preceding statutes. In that case it was held that the trademark "Sunkist" used on fruit and fruit products was not infringed by the use of the same name on bread.

Plaintiff, however, relies upon general equitable principles rather than any statutory provisions, and claims a right to recover on the theory of a doctrine of so-called dilution, namely, that one who employs the trade-mark of another, even though not on competing goods or services, detracts from its value. In support of this contention the plaintiff relies on the case of Tiffany & Co. v. Tiffany Productions, Inc., 147 Misc. 679, 264 N.Y.S. 459, a decision of the New York Supreme Court which was affirmed on appeal. While that decision may sustain plaintiff's theory, the doctrine has not been adopted by the Federal courts.

In American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317, the Supreme Court in an opinion written by Mr. Justice Sutherland enunciated the following principles:

"The mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same trademark by others on articles of a different description. There is no property in a trade-mark apart from the business or trade in connection with which it is employed. * * * 'The law of trade-marks is but a part of the broader law of unfair competition'. * * * the general

purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another."

As far as this Court is aware, the Supreme Court has never departed from this formulation of the applicable principle of law.

Originally this doctrine was limited to a situation in which the infringer was using the trademark or an imitation of the trademark on competing goods or products. Later it was broadened to cover a use of a trademark belonging to another by which the infringer impliedly represents that what he sells emanates from the owner of the trademark. Such use obviously may do much harm to the owner of the trademark, especially if the goods sold by the infringer are of an inferior quality. I am not aware of any Federal case in which this principle was extended to a situation where there can be no implication and no inference can be drawn by any member of the public of reasonable intelligence that the infringer is selling goods or services that are emanating from the owner of the trademark.

Judge Learned Hand in Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972, at pages 973–974, discussed this question in his usual inimitable manner. He said:

"The law of unfair trade comes down very nearly to this—as judges have repeated again and again— that one merchant shall not divert customers from another by representing what he sells as emanating from the second."

Then he continues:

"However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask."

But Judge Hand added a significant qualification. He goes on to say:

"And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

This Court is of the opinion that the case at bar involves a situation that is within the exception indicated by Judge Hand, namely, that the borrower's use is so foreign to the owner's as to insure against any identification of the two.

■■ To summarize this discussion, uses of another's trademark may fall into either one of three categories:

1. The borrower's use may be in connection with competing goods or services.

2. The borrower's use may be in connection with non-competing goods or services, but under circumstances giving rise to the reasonable possibility of an inference on the part of the public that these goods or services emanate from the owner of the trademark.

3. The borrower's use may be in connection with non-competing goods or services, the use being so foreign to the owner's as to preclude any identification or confusion between the two.

In the first two cases, an action for an infringement will lie, but not in the third case.

Under the circumstances, the Court is of the opinion that the plaintiff has not established any right to recover, and the motion to dismiss will be granted.