Jasen, J.
We are called upon today to decide whether the trade name "Allied Maintenance” is entitled to protection pursuant to section 368-d of the General Business Law—commonly referred to as the anti-dilution statute.
The plaintiff, Allied Maintenance Corporation, has been in business, in one form or another, since 1888. Throughout the many years since its inception, Allied Maintenance has concentrated the scope of its services upon the cleaning and maintenance of large office buildings. The defendant, Allied Mechanical Trades, Inc., a corporation organized in 1968 as a successor to Controlled Weather Corporation, is engaged primarily in the installation and repair of heating, ventilating and air-conditioning equipment.
Alleging that the defendant performed maintenance services identical to those it performed, Allied Maintenance brought this action to enjoin Allied Mechanical from operating under the name "Allied” or "Allied Mechanical Trades, Inc.”, or using the word "Allied” in any way in connection with its business. The trial court granted the injunction, finding that the parties were actual and potential competitors in the cleaning and maintenance industry in the metropolitan New York City area and that the auditory and visual similarity between their names created a likelihood of confusion. On this basis, the court concluded that defendant’s use of the name Allied Mechanical would result in irreparable injury to plaintiffs reputation, good will, and proprietary business interests, and would thus constitute unfair competition. The Appellate Division reversed, however, finding an absence of either competition or confusion, actual or potential. The court concluded that "no user of the services of either party has been or may probably be confused or deceived by any similarity in the names of the parties.” (55 AD2d 865, 866.)
In addition to the protection of trade-marks and trade names afforded by the traditional actions for trade-mark infringement and unfair competition, New York, as well as a number of other States,[1] has adopted an anti-dilution statute. (General Business Law, § 368-d.) This statute provides: "Likeli *542 hood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.” (Emphasis added.) The purpose behind the enactment of this statute was the prevention of trade-mark or trade name dilution—i.e., "the whittling away of an established trade-mark’s selling power and value through its unauthorized use by others upon dissimilar products.” (NY Legis Ann, 1954, p 49 [emphasis added].) In the absence of a statute of this nature, a plaintiff seeking to prohibit the use of a trade name by another would be required to frame his complaint within the strictures of an action for either trade-mark infringement or unfair competition. A brief review of the elements of these actions is useful in interpreting the legislative intent behind the enactment of section 368-d.
Historically, two causes of action have existed to protect the user of a trade-mark or trade name from its improper use by another—viz., trade-mark infringement and unfair competition. Trade-mark infringement developed as the remedy designed to protect technical trade-marks—i.e., those marks which were arbitrary, fanciful or coined. (See 3 Callman, Unfair Competition, Trademarks and Monopolies [3d ed], § 66.1.) Trade-marks such as "Kodak”, "Xerox”, "Exxon” and "Coke” would fall within this category. As the law evolved, the protection provided by an action for trade-mark infringement was supplemented by the formulation of a broader remedy—an action for unfair competition. (See Dell Pub. Co. v Stanley Pub., 9 NY2d 126, 133.) This remedy was intended to protect nontechnical, common-law trade-marks—marks used although not registered—as well as trade names. (1 Callman, Unfair Competition, Trademarks and Monopolies [3d ed], § 4.1.)[2]
*543 Today, in an action for trade-mark infringement brought pursuant to either New York (General Business Law, § 368-b) or Federal law (Lanham Act, § 32, subd [1], US Code, tit 15, § 1114, subd [1]), it is necessary to show that the defendant’s use of the trade-mark is likely to cause confusion, mistake or to deceive; actual confusion need not be shown. (See Dell Pub. Co. v Stanley Pub., 9 NY2d, at p 134, supra; James Burrough Ltd. v Sign of Beefeater, 540 F2d 266, 274; Bunn Co. v AAA Replacement Parts Co., 451 F2d 1254, 1261; General Mills v Regnery Co., 421 F Supp 359, 361; Chips 'n Twigs v Chip-Chip, 414 F Supp 1003, 1013.) Similarly, it has been held that in an action for unfair competition a showing of a likelihood of confusion, rather than actual confusion, is all that is required to state a cause of action. (See Dell Pub. Co. v Stanley Pub., 9 NY2d, at p 132, supra; Avon Shoe Co. v David Crystal, Inc., 279 F2d 607, 614; Field Enterprises Educ. Corp. v Grossett & Dunlap, 256 F Supp 382, 390.)
Since an action for infringement as well as an action for unfair competition both require a showing that the public is likely to confuse the defendant’s product or service with that of the plaintiff, relief may be difficult to secure in situations in which the parties are not in competition, nor produce similar products or perform similar services. It is for this reason that section 368-d specifically provides that an injunction may be obtained notwithstanding the absence of competition or confusion.
Generally, courts which have had the opportunity to interpret an anti-dilution statute have refused to apply its provisions literally. New York courts, State and Federal, have read *544 into the statute a requirement of some showing of confusion, fraud or deception. (See, e.g., Cue Pub. Co. v Colgate-Palmolive Co., 45 Misc 2d 161, affd 23 AD2d 829; King Research v Shulton, Inc., 324 F Supp 631, affd 454 F2d 66; Geisel v Poynter Prods., 295 F Supp 331; but see National Lampoon v American Broadcasting Cos., 376 F Supp 733, affd 497 F2d 1343.)
Judicial hesitance to enforce the literal terms of the anti-dilution statute has not been limited to New York. In Illinois, for example, some courts have gone so far as to declare the statute inapplicable where the parties are competitors and a likelihood of confusion does exist. These decisions were premised upon the belief that a plaintiff who can frame his complaint under a theory of infringement or unfair competition— albeit unsuccessfully perhaps—should not succeed under a dilution theory. (See Filter Dynamics Int. v Astron Battery, 19 111 App 3d 299, 314-315; Edgewater Beach Apts. Corp. v Edgewater Beach Mgt. Co., 12 111 App 3d 526, 534; AlbertoCulver Co. v Andrea Dumon, Inc., 466 F2d 705, 709.) However, one court in Illinois has interpreted the anti-dilution statute literally, reasoning that unless recovery for dilution is permitted in the absence of competition or confusion the statute adds nothing to existing law. (Polaroid Corp. v Polaraid, Inc., 319 F2d 830, 836-837.) This approach has also been taken in Massachusetts. (See, e.g., Tiffany & Co. v Boston Club, 231 F Supp 836, 844; Clairol, Inc. v Cody’s Cosmetics, 353 Mass 385, 391.)
Notwithstanding the absence of judicial enthusiasm for the anti-dilution statutes, we believe that section 368-d does extend the protection afforded trade-marks and trade names beyond that provided by actions for infringement and unfair competition. The evil which the Legislature sought to remedy was not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name. Thus, it would be of no significance under our statute that Tiffany’s Movie Theatre is not a competitor of, nor likely to be confused with Tiffany’s Jewelry. (See NY Legis Ann, 1954, p 50, citing Tiffany & Co. v Tiffany Prods., 147 Misc 679, affd 237 App Div 801, affd 262 NY 482.) The harm that section 368-d is designed to prevent is the gradual whittling away of a firm’s distinctive trade-mark or name. It is not difficult to imagine the possible *545 effect which the proliferation of various noncompetitive businesses utilizing the name Tiffany’s would have upon the public’s association of the name Tiffany’s solely with fine jewelry. The ultimate effect has been appropriately termed dilution.
Although section 368-d does not require a showing of confusion or competition to obtain an injunction, it does require a "likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or tradename.” (Emphasis added.) The statute prohibits any use of a name or mark likely to dilute the distinctive quality of a name in use. To merit protection, the plaintiff must possess a strong mark— one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution. Courts interpreting Massachusetts’ anti-dilution statute—applying its terms literally—have required a showing that the trade-mark or name to be protected is either unique or has acquired a secondary meaning before issuing an injunction. (See, e.g., Skil Corp. v Barnet, 337 Mass 485, 491; Mann v Parkway Motor Sales, 324 Mass 151, 157.)
Turning to the case before us, it is quite apparent that the name "Allied” is a weak trade name. Rather than being distinctive, arbitrary, fanciful or coined, it is, in essence, generic or descriptive. Although the name "Allied” bespeaks of more originality than "maintenance”, it is nevertheless a common word in English usage today. There is nothing in the name "Allied Maintenance” itself which indicates that it is an inherently strong trade name susceptible to dilution. (See Dell Pub. Co. v Stanley Pub., 9 NY2d, at p 136, supra; Esquire, Inc. v Esquire Slipper Mfg. Co., 243 F2d 540, 543; Exquisite Form Inds. v Exquisite Fabrics of London, 378 F Supp 403, 415.) Nor can it be said that the name Allied Maintenance has acquired a secondary meaning. Plaintiff seeks to prevent the defendant from using the word "allied” in any connection with its business. To establish secondary meaning it must be shown that through exclusive use and advertising by one entity, a name or mark has become so associated in the mind of the public with that entity or its product that it identifies the goods sold by that entity and distinguishes them from goods sold by others. (Truck Equip. Serv. Co. v Fruehauf Corp., 536 F2d, at p 1219, supra.) A quick glance at the New York City phone directories will reveal the existence of at least 300 business entities in the metropolitan area incorporating the *546 word "allied” in their trade name. In light of the large number of business entities using the generic term alliéd in their trade name, it cannot be said that the name "allied” has acquired a secondary meaning. We remain unconvinced that the public associates the word "allied” with the plaintiff’s cleaning and maintenance service.
In sum, although section 368-d should be interpreted literally to effectuate its intended purpose—protection against dilution—only those trade names which are truly of distinctive quality or which have acquired a secondary meaning in the mind of the public should be entitled to protection under the anti-dilution statute. "Allied Maintenance” cannot be said to have attained this stature.
Accordingly, the order of the Appellate Division should be affirmed.

. (Ark Stat Ann, § 70-550; Cal Business & Professional Code, § 14330; Conn Gen Stat Ann, § 35-1 li, subd [c]; Del Code, tit 6, § 3313; Fla Stat Ann, § 495.151; Idaho Code, § 48-512; 111 Rev Stat, ch 140, § 22; Iowa Code Ann, § 548.11, subd 2; Mass Gen Laws Ann, ch HOB, § 12; Mo Ann Stat, § 417.061; Neb Rev Stat, § 87-122; NH Rev Stat Ann, § 350-A:12; NM Stat Ann, § 49-4-11.2; Ore Rev Stat, § 647.107; RI Gen Laws, § 6-2-12.) Although minor differences in wording exist, each of these statutes is a substantive duplicate of New York’s anti-dilution statute.

. At one time fine distinctions existed between trade-marks, technical and nontechnical, and trade names. Only a technical trade-mark could be registered and protected via an action for infringement. But today, it is recognized that nontechnical marks and trade names are also registrable and can be protected in an action for infringement. (3 Callman, Unfair Competition, Trademarks and Monopolies, [3d ed], § 66.1.) However, since a trade name or nontechnical trade-mark cannot claim the procedural advantages (see Dell Pub. Co. v Stanley Pub., 9 NY2d, at p 133, supra) afforded a technical mark, it is necessary to show in an action for infringement that the name or mark has acquired a secondary meaning. Secondary meaning can be established by *543 showing that notwithstanding the absence of an arbitrary, fanciful or coined expression, a trade-mark or trade name has, through exclusive use and advertising by one entity, become so associated in the mind of the public with that entity or its product that it identifies the goods sold by that entity and distinguishes them from goods sold by others. (Truck Equip. Serv. Co. v Fruehauf Corp., 536 F2d 1210, 1219, cert den 429 US 861; Shoppers Fair of Ark. v Sanders Co., 328 F2d 496, 499; Merriam Co. v Saalñeld, 198 F 369, 373; Liberty Mut. Ins. Co. v Liberty Ins. Co. of Tex., 185 F Supp 895, 903.)
In addition to the erosion of technical distinctions in the theory of infringement, the gravamen of an action for unfair competition has also undergone a liberalization. At one time it was necessary to show in an action for unfair competition that plaintiff's trade-mark or trade name had acquired a secondary meaning. Gradually, courts have begun to recognize that, in essence, an action for unfair competition turns not upon the acquisition of a secondary meaning, but upon whether the acts of the defendant can be characterized as unfair. (See International News Serv. v Associated Press, 248 US 215; Sample, Inc. v Porrath, 41 AD2d 118, affd 33 NY2d 961.)