**SALLY GEE, INC., Plaintiff-Appellant,**

v.

**MYRA HOGAN, INC., Myra Hogan and Sally Lee, Defendants-Appellees.**

**No. 440, Docket 82–7329.**

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1982.

Decided Feb. 7, 1983.

Abraham Friedman, Brooklyn, N.Y. (Goodman & Teitelbaum, Brooklyn, N.Y., of counsel), for plaintiff-appellant.

Arthur W. Baily, New York City, for defendants-appellees.

Before MOORE *, CARDAMONE and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

Sally Gee, Inc. appeals from a judgment entered in the United States District Court for the Southern District of New York dismissing its complaint against defendants Sally Lee, Myra Hogan and Myra Hogan, Inc. The complaints allege Lanham Act claims of trademark infringement and false designation of origin, in violation of 15 U.S.C. §§ 1114, 1125, and pendant state claims of trademark infringement, unfair competition, and dilution of trademarks. After a one day bench trial, District Judge Vincent L. Broderick made oral findings of fact and conclusions of law rejecting all of plaintiff's claims.[1] We affirm the dismissal of the Lanham Act claims and the pendant claims of trademark infringement and unfair competition for the reasons set forth by the district court in its opinion. We also affirm the dismissal of the claim alleging dilution, but write in order to clarify the elements necessary for a cause of action under New York's "anti-dilution" statute, N.Y.Gen.Bus.Law § 368–d (McKinney 1968).

### Facts

Sally Gee, Inc. ("Sally Gee") is a New York corporation which has manufactured and distributed women's apparel since 1940. It services over 16,000 accounts and in 1981 generated total net sales of over $4.5 million. Plaintiff's operations are conducted from a main showroom and office facility in New York City's garment district and several regional offices. Sally Gee's principal customers are department stores, although it also sells to specialty shops and mail order houses. It advertises widely through trade journals, catalogues, department store displays and cooperative newspaper advertisements with its retailer customers.

Sally Gee manufactures and sells both accessories, such as scarves, stoles, and ties, and ready-to-wear items, such as tops, skirts, sweaters, jackets, and culottes. This apparel is manufactured in a "cut and sew" warehouse and mill. Prices are commensurate with mechanical mass production. Sweaters, which accounted for more than 40 per cent of Sally Gee's 1981 net sales, sold at a wholesale price of $10 to $20 each. In most department stores Sally Gee's accessories and ready-to-wear items are displayed on the ground floor which, in the euphemistic language of the trade, "has a lower price point." Occasionally, Sally Gee items have been displayed with higher priced merchandise on an upper floor.

The fictitious name "Sally Gee" was coined by Sally Goldstein, one of the corporation's founders. It was registered as a trademark for "sweaters, stoles, scarfs, and the like," in 1963. Sally Gee has since registered other trademarks using "Sally Gee" or "Sally" for apparel.[2] The clothing labels bearing the Sally Gee marks are printed in italicized lettering of upper and lower case, e.g., *"Sally Gee"*.

Defendant Sally Lee, nee Sara Margaret Lee, has used the name Sally Lee since childhood except on such official documents as her driver's license and social security card. After working for over seven years as a freelance designer of jewelry and clothing, Sally Lee commenced her present business as a designer, manufacturer, and distributor of women's apparel in 1978.

---

* Judge Leonard P. Moore participated in the oral argument in this case and voted before his death on Tuesday, December 7, 1982 to dispose of the case in the manner set forth in this opinion. He was unable to concur in the opinion itself due to his last illness.

1. The dismissal of defendant's counterclaim alleging unfair competition is not before us on appeal.

2. The trademarks are "Sally Juniors," "Sally Talls," "Sculptured Knit by Sally Gee," "Peblon by Sally Gee," "Sally Gee New York, The Showcase of the World," "Pebble Knit by Sally Gee," "Peblon Knit by Sally Gee," and "Scissor Fashions by Sally Gee."

She incorporated in New York as Sally Lee, Ltd. in 1979. Her small but growing business, based in her New York City residential loft, generated gross sales of $50,000 in its first year and $100,000 in 1981. Sally Lee primarily sells sweaters and blouses, but also sells skirts, dresses, pants, culottes, and other ready-to-wear apparel. Sally Lee designs these items, chooses the material, and contracts with independent workers for their production. Her sweaters are hand knit and her blouses are made by a manual "cut and sew" method. The prices of Sally Lee's clothing reflect their handmade quality. Several models of Sally Lee sweaters sold in 1981 for wholesale prices ranging from $150 to $175; blouses sold in early 1982 for wholesale prices from $34 to $70.

Sally Lee clothing is marketed through the New York City garment district showroom of defendant Myra Hogan, Inc., which is owned by defendant Myra Hogan. Hogan, acting as Sally Lee's sole sales representative, has primarily sold the Sally Lee line to New York City department stores and boutiques. Sally Lee's creations are displayed on the upper floors of department stores such as Lord & Taylor and Bloomingdale's. Her merchandise is sold in the "better" departments[3] as opposed to "moderate" or "budget" departments, and, according to the testimony of Hogan, has never been relegated to a ground floor sales spot.

Sally Lee has not registered her name as a trademark. She does not advertise. The label affixed to her clothing contains the name "Sally Lee" in upper case block letters, e.g., SALLY LEE. Both Sally Lee and Hogan testified that they had neither heard of Sally Gee nor seen its trademarks prior to the commencement of this action.

*The District Court's Decision*

In dismissing Sally Gee's Lanham Act claims, the district court first determined that since the parties' products differed in quality, price and consumers, the products were noncompetitive. The court then proceeded to analyze the case under the standards for Lanham Act litigation involving noncompetitive products set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).[4] Applying the *Polaroid* criteria, the district court first characterized the "Sally Gee" marks as "fairly strong" and "fanciful." Second, it found the "Sally Gee" and "Sally Lee" marks similar, but visibly and audibly distinguishable. Third, using the same factors underlying its finding of noncompetitiveness, the court found the parties' products to be "proximate" only in the sense that they were both women's clothing, and to possess divergent qualities, prices, and consumers. Fourth, the court found no evidence that the wide price or quality gap between the products of the respective parties would be bridged. Fifth, the trial judge stated that absolutely no actual or likely confusion as to source had been demonstrated by plaintiff. Sally Gee presented neither evidence of confused inquiries by retailers or the consuming public, nor any market study showing latent confusion. Sixth, the court found Sally Lee's product to be of higher quality than plaintiff's. Finally, the court found that retailers were extremely sophisticated in their buying habits and that the consuming public was sufficiently discerning in its purchases to distinguish between the two lines of clothing. The pendant state claims of trademark infringement and unfair competition by "palm-

---

**3.** Sally Lee apparel has been displayed, among other locations, in the fifth floor "country clothing" department at Lord & Taylor and the third floor "Young East Sider" department at Bloomingdale's.

**4.** In *Polaroid,* Judge Friendly stated that,
[w]here the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks,

the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account.
287 F.2d at 495 (citation omitted).

ing off" were dismissed based on the findings and conclusions on the Lanham Act claims.

The district court also dismissed the remaining pendant claim which alleged that the use of the Sally Lee name on clothing diluted the distinctive quality of the Sally Gee marks. In addressing this claim, the trial court held that plaintiff's cause of action under New York's anti-dilution statute failed because plaintiff did not demonstrate the existence of what the court believed were five necessary elements: (1) consumer confusion; (2) defendant's intent to trade on plaintiff's mark; (3) likelihood of injury to the plaintiff's business reputation or dilution of its mark or the distinctiveness of its mark; (4) direct competition; and (5) the inferior quality of defendant's product.

Sally Gee's appeal to this Court followed.

### Discussion

■ We affirm the dismissal of the Lanham Act claims. The district court's finding of noncompetitiveness was not clearly erroneous and it correctly applied the *Polaroid* criteria in passing upon the Lanham Act claims. We also affirm its dismissal of the state law claims of trademark infringement and unfair competition by "palming off." Under New York law, proof of likelihood of confusion as to source is essential to prevail on either of these causes of action. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977); *Dell Publishing Co. v. Stanley Publications, Inc.*, 9 N.Y.2d 126, 132–33, 211 N.Y.S.2d 393, 172 N.E.2d 656 (1961). As with the Lanham Act claims, such proof was lacking.

■ While the District Court also reached the correct result in dismissing the claim of dilution, it incorrectly included as necessary elements of that cause of action consumer confusion and direct competition. New York's anti-dilution statute provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, *notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.*

N.Y.Gen.Bus.Law § 368–d (emphasis added). Section 368–d's qualifying clause means exactly what its language denotes. Neither competition between the parties nor confusion about the source of products, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 n. 8 (2d Cir.1979), appears to be necessary to state a cause of action for dilution. *Allied*, 42 N.Y.2d at 544–45, 399 N.Y.S.2d 628, 369 N.E.2d 1162.[5]

■ The purposes for which the statute was enacted lend further support to our view that confusion and direct competition are not necessary elements of an anti-dilution action under New York law. Section 368–d provides a cause of action distinct from other state law actions for trademark infringement and unfair competition. "The evil which the Legislature sought to remedy was not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name." *Allied*, 42 N.Y.2d at 544, 399 N.Y.S.2d 628, 369 N.E.2d 1162; *see R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 658 n. 14 (2d Cir.1979). The interest protected by § 368–d is not simply commercial goodwill, but the selling power that a distinctive mark or name with favor-

---

5. In *Allied* all of the judges of New York's Court of Appeals indicated that likelihood of confusion was not a necessary element of a § 368–d claim. The position we now take is consistent with our decision in *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 49 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979), which noted that other courts—both state and federal—have acknowledged that injury to a recognized trade name, rather than damage arising from confusion among consumers, lies at the heart of the wrong.

able associations has engendered for a product in the mind of the consuming public. *See,* Note, *Trademark—§ 368–d Dilution Relief in New York—Abandoning the Confusion/Competition Requirement,* 46 Fordham L.Rev. 1315, 1323–24 (1978) ("Dilution Relief").

It is in this light that we analyze Sally Gee's claim of dilution. To merit § 368–d protection a plaintiff must first possess a trademark or name which is "truly of *distinctive* quality" or one which has "acquired a secondary meaning in the mind of the public." *Allied,* 42 N.Y.2d at 546, 399 N.Y.S.2d 628, 369 N.E.2d 1162 ("Allied" not sufficiently distinct to warrant protection); *cf. Tiffany & Co. v. Tiffany Productions, Inc.,* 147 Misc. 679, 264 N.Y.S. 459 (N.Y.Sup. Ct.), *aff'd,* 237 A.D. 801, 260 N.Y.S. 821 (1st Dep't 1932), *aff'd,* 262 N.Y. 482, 188 N.E. 30 (1933) (pre-§ 368–d case enjoining use of "Tiffany" by a movie producer and distributor in action by makers of Tiffany jewelry). Some commentators believe that only "famous" or "celebrated" marks should be protected by anti-dilution statutes. *See, e.g.,* 2 J. McCarthy, *Trademarks and Unfair Competition* § 24:14, at 162–63 (1973); Note, *Dilution: Trademark Infringement or Will-O'-The-Wisp?,* 77 Harv.L.Rev. 520, 530 (1964).

Although the district court did not make explicit findings as to the "distinctive quality" or "secondary meaning" of the Sally Gee trademarks, it did find the marks "fairly strong." The strength of a mark essentially reflects its distinctiveness, which, for trademark infringement purposes, is its "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979) (citations omitted). The court also characterized the Sally Gee marks as "fanciful," since they are based on a proper name. A fanciful mark falls within the most distinctive genus of trademarks, *see McGregor-Doniger Inc.,* 599 F.2d at 1131.

We note, however, that Judge Broderick made these findings when applying federal trademark law. Federal trademark infringement standards relating to strength of mark were not established with the concerns of the New York anti-dilution statute in mind. In *Allied* the majority indicated that the anti-dilution statute protects only extremely strong marks, *see Allied,* 42 N.Y.2d at 545–46, 399 N.Y.S.2d 628, 369 N.E.2d 1162; *see also* 1954 N.Y.Legis. Annual 49 (listing as examples of diluting tradenames: "Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, [and] Bulova gowns"), perhaps not even all those that qualify as arbitrary or fanciful, *see id.* at 548, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (Cooke, J., dissenting) (reading majority opinion to limit protection of statute to "most well known names"). The district court did not consider the *Allied* standard in making its findings. We need not determine whether the Sally Gee mark was sufficiently distinct under *Allied* to warrant protection under the anti-dilution statute because other elements of the dilution claim are lacking.

The second element which needs to be proved for a successful claim under § 368–d is likelihood of dilution. Dilution is not defined in § 368–d and remains a somewhat nebulous concept in New York decisions. *See* "Dilution Relief," 46 Fordham L.Rev. at 1335–38. Typically, dilution is characterized as a "whittling down" of the identity or reputation of a tradename or mark. *See Mortellito v. Nina of California, Inc.,* 335 F.Supp. 1288, 1296 (S.D.N.Y.1972); *Allied,* 42 N.Y.2d at 544, 399 N.Y.S.2d 628, 369 N.E.2d 1162. A more helpful definition of dilution is provided by Callman: "Dilution is an act which 'threatens two separable but related components of advertising value. Junior uses may blur a mark's product identification or they may tarnish the affirmative associations a mark has come to convey.'" 3 R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* § 84.2, at 954–55 (footnote omitted).

Applying this definition to the present case, Sally Gee did not prove and could not have proven any tarnish to its products' reputation by Sally Lee's handmade, higher priced, and higher quality clothing. Con-

sistent with the above definition and contrary to the district court's statement respecting dilution, a cause of action may also lie on a "blurring" theory. However, Sally Gee also failed to prove that the product-evoking quality of its marks were likely to be weakened by use of the Sally Lee name. First, fanciful though its marks may be, Sally Gee must set forth some proof that its marks conjure up images of its clothing in the minds of the consuming public in order to establish associational qualities entitling it to protection from dilution. The record is barren of any proof that the use of the Sally Lee name is likely to blur Sally Gee's product identification, and none is readily inferrable. Sophisticated retailers and discerning consumers of women's apparel are unlikely to have blurred vision causing them to see "Sally Gee" upon viewing a Sally Lee label.

Finally, the absence of predatory intent by the junior user is a relevant factor in assessing a claim under the anti-dilution statute, *see Information Clearinghouse, Inc. v. Find Magazine*, 492 F.Supp. 147, 162 n. 44 (S.D.N.Y.1980), since relief under the statute is of equitable origin, *see Cue Publishing Co. v. Colgate—Palmolive Co.*, 23 A.D.2d 829, 259 N.Y.S.2d 377 (1st Dep't 1965). The district court's finding that Sally Lee and the other defendants acted in good faith is amply supported in the record and is not clearly erroneous. Thus the district court's refusal to grant injunctive relief in this case was not an abuse of discretion.

Accordingly, the judgment is affirmed.