**EASTMAN KODAK COMPANY, Plaintiff,**

v.

**D.B. RAKOW, Defendant.**

**No. Civ. 88–300L.**

United States District Court,
W.D. New York.

Aug. 2, 1989.

John Stuart Smith, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for plaintiff.

Walter N. Munson, Wiles & Fahey, Syracuse, N.Y., for defendant.

### DECISION AND ORDER

LARIMER, District Judge.

On May 4, 1989, I denied plaintiff's motion for summary judgment. In that same order, I advised the parties that the trial was adjourned pending the Second Circuit's decision in *Mead Data Central, Inc. v. Toyota Motor Sales,* No. 89–7001.

On May 18, 1989, the Second Circuit issued its decision in the *Mead Data* case (875 F.2d 1026), and the next day, plaintiff by letter requested the Court to reconsider its order denying summary judgment based on the *Mead Data* case.

Plaintiff's application for reconsideration is granted. For the reasons set forth below, plaintiff's motion for partial summary judgment is granted.

The defendant in this case, D.B. Rakow (hereafter "Rakow"), is a professional comedian who has used the business stage name "Kodak", among other names. The plaintiff, Eastman Kodak Company (hereafter "Kodak"), has used "KODAK" as its trademark for more than 100 years. The KODAK mark is the subject of 31 registrations in the United States Patent and Trademark Office for a variety of commercial products.

On March 18, 1988, Kodak filed a complaint, order to show cause, and a temporary restraining order. The complaint alleges, *inter alia*, that the defendant Rakow violated various provisions of the Lanham Trademark Act, 15 U.S.C. §§ 1051 et seq. and of § 368-d of the New York General Business Law. On March 18, 1988, the court signed a temporary restraining order prohibiting the defendant from using the name "Kodak" in connection with any appearances or in connection with any promotion of his appearances. That same day, Rakow filed a certificate of doing business under the name "Kodak" in the Onondaga County Clerk's Office.

The case is presently before the court on plaintiff's motion for summary judgment on its claim that defendant's use of the name "Kodak" as his business name violates the New York anti-dilution statute, N.Y.Gen.Bus.Law § 368-d.

## DISCUSSION

### A. *Dilution of Trademark*

Section 368-d of the New York General Business Law provides as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition between the parties or the absence of confusion as to the source of goods or services.

To prevail on a claim under this section, a plaintiff must establish two elements. "First, plaintiff's mark must possess a distinctive quality capable of dilution." *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). "Second, plaintiff must show a likelihood of dilution." *Mead Data*, 875 F.2d at 1030. Although bad faith or "predatory intent" is not a necessary element of a § 368-d claim, it is a relevant factor in assessing such a claim. *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 626 (2d Cir.1983).

■ 1. *Strength of Mark.* As to the first element, defendant cannot seriously contend that the trademark KODAK is not truly of distinctive quality and that it has acquired a secondary meaning in the mind of the public. Defense counsel conceded as much at oral argument.

The Kodak trademark is perhaps one of the strongest and most distinctive trademarks in this country, if not in the world. As previously noted, and as set forth in the affidavit of Richard Bartlett, Divisional Vice-President, Director of Marketing Communications, Communications and Public Affairs Division for Eastman Kodak Company (hereafter "Bartlett affidavit"), Kodak has used this trademark for over 100 years, initially in connection with cameras, and subsequently in connection with a wide range of products including chemicals, videotapes, jewelry, picture frames, and photo albums. Over the past five years, Kodak has spent more than $1 billion to promote and advertise its products under the KODAK mark. Kodak products are sold throughout the United States in over 50,000 retail locations. In 1986, Kodak's worldwide sales exceeded $6 billion, and in 1987 they exceeded $7 billion. Kodak has also sponsored numerous entertainment events and entertainers, such as the Olympic Games since 1968, the Tournament of Roses Parade since 1964, the Grand Ole Opry since 1985, and Sea World and Cypress Gardens since 1983. Since

1986, the KODAK trademark has appeared in both print and movie form at the Captain EO Exhibit at Epcot Center. Kodak has also produced videotapes for Larry Bird and Bill Cosby, who is the official spokesperson for the Kodak Colorwatch System.

There is no doubt that the KODAK mark is one of the strongest and most recognizable marks in the world, *See Mead Data,* 875 F.2d at 1031; see also cases cited in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, pp. 10–12, n. 1 & 2., and that it has "a distinctive quality for a significant percentage" of the consuming public. *See Mead Data,* 875 F.2d at 1031.

■ 2. *Likelihood of Dilution.* The second element that plaintiff must establish is a likelihood of dilution. *Sally Gee,* 699 F.2d at 625. Dilution of a trademark may occur as a result of a "blurring" of the mark's product identification or as a result of a "tarnishing"[1] of the "affirmative association a mark has come to convey." *Id., quoting* 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 84.2, at 954–55.

*Tarnishing of Mark.* Based on the strength of the KODAK mark and on the defendant's use of the identical name, a mental association between the two marks is virtually inevitable. *Mead Data,* 875 F.2d at 1031. This is not a case where a junior user uses a name "similar" to the senior users mark; here defendant has chosen to use the exact mark "Kodak" in his act and promotional material. Regardless of the fact that the uses of the mark are different, the name "Kodak" in a commercial setting "unquestionably brings to mind" the Eastman Kodak Company. *See Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir. 1979).

The defendant has admitted that his "comedy act includes humor that relates to bodily functions and sex, and that [he] uses crude, off-color language repeatedly." (See Defendant's Answer, para. 1 admitting

allegations contained in para. 26 of Plaintiff's complaint.) In contrast, Kodak has adopted a corporate policy with respect to violence and sexual themes in programs with which it associates its advertising. That policy prohibits the association of the KODAK mark with programs that contain "excessive and gratuitous violence or sexual themes for their own sake when such material plays no part or makes no important contribution to a dramatic statement." (Ex. 1 to Bartlett Affd.).

The mental association between the two marks coupled with the content of defendant's act creates a likelihood that the "affirmative associations [that the Kodak] mark has come to convey" and which the Company has carefully tended for over a century will be tarnished by defendant's use of the mark. *Mead Data,* 875 F.2d at 1031.

■ *Blurring of Mark's Product Identification.* Contrary to defendant's assertions, the viability of a cause of action under New York's anti-dilution statute does not depend on the existence of competition between the parties or on confusion about the source of the products. *Allied,* 42 N.Y.2d at 544–45, 399 N.Y.S.2d 628, 369 N.E.2d 1162; *Dallas Cowboys,* 604 F.2d at 205 n. 8. As the court stated in *Tiffany & Co. v. Tiffany Productions, Inc.,* 147 Misc. 679, 681, 264 N.Y.S. 459 (Sup.Ct.N.Y.Co.), *aff'd,* 237 App.Div. 801, 260 N.Y.S. 821 (1st Dept.1932), *aff'd,* 262 N.Y. 482, 188 N.E. 30 (1933)

> [t]he real injury in such cases of noncompetitive products "is the gradual whittling away or dispersion of the identity and hold upon the public mind of the mark or name by its use upon non-competing goods. The more distinctive or unique the mark the deeper is its impress upon the public consciousness and the greater its need for protection against vitiation or dissociation from the particular product in connection with which it has been used."

---

1. In this regard, the court notes that plaintiff is proceeding on both a tarnishing and blurring

theory of dilution.

*Id.*, at 681–82, 264 N.Y.S. 459 quoting from "Rational Basis of Trade–Mark Protection", 40 Harv.L.Rev. 813, 825.

The New York court's comments in *Allied* regarding the *Tiffany* case are equally appropriate in this case. "It is not difficult to imagine the possible effect which the proliferation of various noncompetitive businesses utilizing the name [Kodak] would have upon the public's association of the name [Kodak] with" its particular line of products, most notably cameras, camera equipment, and film. *Allied*, 42 N.Y.2d at 544–45, 399 N.Y.S.2d 628, 369 N.E.2d 1162. Over the past five years alone, the Kodak Company has spent more than $1 billion to promote and advertise its products under the Kodak mark. There is no doubt that this is a valuable mark deserving of protection under § 368–d. In fact, the legislative history of this statute specifically refers to the "Kodak" mark, highlighting the purpose of the statute as designed "to prevent such hypothetical anomalies as ... Kodak pianos". 1954 N.Y.State Legis.Ann., p. 49.

Contrary to defendant's assertions, the fact that the parties are not in direct competition does not militate against a finding of dilution.

> The evil which the Legislature sought to remedy was not public confusion caused by similar products or services by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name.

*Allied Maintenance v. Allied Mechanical*, 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977).

Defendant has made much of the fact that he is generally known by the nickname "Kodak" to all but his mother. It is significant, however, and the record is clear on this point, that the defendant has not consistently used the name "Kodak" as his stage name. Rather, over the course of his 8–year career as a stand-up comic, defendant has regularly used different stage names, trying to make one "work", and was still doing so at the time this suit was filed (Rakow Deposition, pp. 81–82, 88–89). Although the Kodak name has not neces-sarily "worked" for defendant, for the plaintiff it is the "valuable link" between Kodak and the consuming public, which "has been created by [Kodak's] ingenuity and the merit of [its] wares or services." *Tiffany*, 147 Misc. at 682, 264 N.Y.S. 459. As is evidenced by defendant's own ambivalence regarding his stage name, "[a]ll the rest of infinity is open to [him]." *Tiffany*, 147 Misc. at 682, 264 N.Y.S. 459.

It is precisely this valuable commercial link created and tended by the plaintiff for over a century, that the New York legislature sought to protect by the enactment of the anti-dilution statute. "The term 'dilution' is used in trade-mark law to describe unlawful injury caused by the whittling away of an established trade-mark's selling power and value through its unauthorized use by others upon dissimilar products." 1954 N.Y.State Legis.Ann., p. 50.

> The use of a mark similar [in this case, identical] to the plaintiff's constitutes a trespass upon his property rights in his mark, for it necessarily involves a gradual impairment of its selling power; it is analogous to the situation where the plaintiff's building is demolished because it is carried away stone by stone.

*Id.*, quoting 3 Callman, *Unfair Competition and Trade–Marks*, p. 1650 (1950).

Although bad faith is not a necessary element under § 368–d, it is relevant in assessing such a claim. *Sally Gee*, 699 F.2d at 626. In this case, plaintiff alleges that one year prior to bringing suit, it entered into an agreement with defendant under the terms of which defendant agreed to stop using the name "Kodak". Although defendant now claims that he did not authorize his business manager to sign the agreement on his behalf, the record is clear that defendant was aware of the existence of the agreement and aware of plaintiff's objection to his use of the name Kodak. Defendant's continued use of the name with knowledge of plaintiff's objections to prior use of the mark tend to indicate a measure of bad faith on defendant's part. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987).

Based on the foregoing discussion, this court finds that plaintiff has demonstrated that there is a likelihood that defendant's continued use of the name Kodak will dilute its trademark. Accordingly, plaintiff's motion for summary judgment on its second cause of action under the New York anti-dilution statute, N.Y.Gen. Bus.L. § 368–d, is hereby granted [2] and the defendant is permanently enjoined [3] from using the name "Kodak" as a business stage name, or from describing himself as "Kodak" in connection with any commercial, advertising, or promotional materials.

### CONCLUSION

Based on the foregoing discussion, it is hereby ORDERED that

(1) Plaintiff's motion for summary judgment on its second cause of action is granted;

(2) Plaintiff's motion for summary judgment with respect to defendant's fourth and fifth affirmative defenses set forth in defendant's Answer is granted and such defenses are hereby dismissed; and

(3) Defendant is permanently enjoined from using the name "Kodak" as a business stage name, or from describing himself as "Kodak" in connection with any commercial, advertising, or promotional materials.

IT IS SO ORDERED.

---

**2.** Plaintiff's motion for summary judgment with respect to defendant's affirmative defenses of laches and acquiescence is likewise granted. Laches and estoppel by acquiescence are personal defenses which result in a loss of rights as against one defendant. *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1046 (4th Cir.1984); 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 31:14 at 587 (2d Ed.1984).

In this case, there is no sufficient evidence that Kodak delayed in its action to enforce its rights as against defendant Rakow or that Kodak expressly or impliedly assured defendant that it would not assert its trademark right against him. *See Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686, 704 (2d Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

**3.** Defendant's contention that the geographic scope of this injunction is limited to New York state is without merit. *See Blue Ribbon Feed Company, Inc. v. Farmers Union Central Exchange, Inc.,* 731 F.2d 415 (7th Cir.1984); *Polaroid Corp. v. Polaraid, Inc.,* 319 F.2d 830 (7th Cir.1963); *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 340 (N.D.Ill.1981).